## UNITED STATES v. BORISUK.
### No. 10805.

United States Court of Appeals
Third Circuit.

Argued Nov. 20, 1952.

Reargued June 19, 1953.

Decided July 14, 1953.

Rehearing Denied Aug. 5, 1953.

Esther Strum Frankel, Paterson, N. J., (Frankel & Frankel, Paterson, N. J., Hayden C. Covington, Brooklyn, N. Y., on the brief), for appellant.

Walter S. Anderson, Asst. U. S. Atty., Newark, N. J., (Grover C. Richman, Jr., U. S. Atty., and I. Edward Amada, Asst. U. S. Atty., Newark, N. J., on the brief), for appellee.

Before McLAUGHLIN, KALODNER and STALEY, Circuit Judges.

McLAUGHLIN, Circuit Judge.

This appeal is from defendant's conviction under the 1948 Selective Service statute for failure to submit to induction.[1]

Appellant registered for selective service on February 16, 1949. On March 30, 1951, he filed his completed conscientious objector form (S.S.S. Form 150) with his local board. At that time he was in his twenty-first year. He had finished grammar school, junior high, regional high school and was in his third year at Rutgers University. He was listed at the latter institution as taking a commercial course, though he seems to have been studying agriculture. In S.S.S. Form 150 he claimed exemption from combatant and non-combatant training and service by reason of his religious training and belief. Asked to describe the nature of his belief, he said, "The Bible teaches to 'Render unto Caesar what is Caesar's and unto God what is God's.' I believe that when the will of man and God separate, it is my duty to follow God." Asked to give the name and address of the individual upon whom he relied most for religious guidance, he named his parents. Asked under what circumstances, if any, he believed in the use of force he replied, "If by force you mean killing, I do not believe it is the authority of any man to take the life of another. I do believe that force (not killing) should be used in the rearing of children." Asked to describe the actions and behavior in his life which in his opinion most conspicuously demonstrate the consistency and depth of his religious convictions his answer was, "I do not know how to answer this question." Asked if he had ever given public expression, written or oral, to the views expressed by him in the form as the basis for his claim for exemption his answer was "No." In answer to whether he had ever been a member of a military organization and, if so, why he had become a member he said, "R.O.T.C. at Rutgers. It was given to me as a required course but after giving it some serious thought I dropped it." He said that he was a Baptist and that "I do not believe the Baptist Church makes any official statements concerning participation in war." On April 5, 1951, he was classified as I-A. Under date of April 7, 1951, he wrote his local board as follows:

"I received my IA classification today and was quite disappointed about not getting any consideration on my form. I should like to appeal my case further and am asking you what procedure I should follow. If you would like to see me personally, would you please let me know when it would be convenient. I am at school, so would

1. Title 50 U.S.C.A.Appendix, § 462; 32 C.F.R. Sec. 1632.14 (1951 edition).

you please direct your communications to my school address."

The board's docket entry of April 10, 1951, showing receipt of this letter reads: "Letter from registrant asking for appeal of his I-A classification and requesting advice as to procedure to follow." The next docket entry, that of April 13, 1951, reads, "Registrant's letter answered with advice to contact our appeal agent, Mr. John Booth, 31 Park Street, Montclair, N. J." On April 22, 1951, the board received a letter from appellant in which he said, "I filled out an application for a IV-E classification and received a I-A from the local board. I would therefore like to appeal my case." After some further correspondence on the necessity of registrant taking a physical examination prior to his papers going to the appeal board, the papers were sent to that body. From there they went to the Department of Justice for an advisory opinion concerning the validity of the conscientious objection. The file was returned to the local board on November 20, 1951, from the appeal board with the I-A classification being retained. In December of that year there was a request by a farmer, as employer of registrant, for the latter's deferment. That was denied. On February 5, 1952, appellant refused to submit to induction. He was indicted under the statute for this and thereafter was tried to the court and convicted.

Appellant's first contention is that he was denied a hearing by his local board. The Selective Service Regulations, 32 C.F. R. Sec. 1624.1(a), provide that every registrant, after classification, shall have the opportunity to appear before the local board if he files a written request within ten days of notice of classification. Appellant never filed such request. The attempt is made to construe his letter to the board of April 7, 1951 (above quoted) as complying with the regulations. The letter on its face states the registrant's disappointment at his classification by the board, that he would like to appeal his case further and it asks what procedure he should follow. The

board promptly replied and suggested he get in touch with the board's appeal agent. On April 22nd there was another letter from registrant asking that his classification be appealed and stating the grounds. The board advised Borisuk that prior to his file being sent to the appeal board he must first have a physical examination. There was more correspondence on this and then on May 21, 1951, in accordance with Borisuk's request that an appeal be taken, his file was sent to the appeal board. Plainly, a request therefor never having been made, there was no denial of a hearing by the board.

It is next asserted that the court deprived the defendant of substantive and procedural due process in that the district judge, in determining that the board had a basis for its classification of appellant and had not acted arbitrarily or capriciously, gave great weight to appellant's answers to the questions on the conscientious objector form. The foundation of the objection is that though the board file was produced by the secretary of the board no member of the board testified.

The file was properly received into evidence under the federal business document rule.[2] Appellant's completed selective service form was in the file and contained the information above outlined. The facts there stated and others readily inferable from them were ample to support the board's I-A classification. Estep v. United States, 1946, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567; Cox v. United States, 1947, 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59. Appellant asks, how could the court determine what the members of the board understood but by their testimony? Appellant misinterpreted the purpose of the trial judge's inquiry. He was not seeking to ascertain the state of mind of the board but simply whether there was sufficient evidence before it in order to properly classify Borisuk.

It is also argued under this caption that the appellant was foreclosed by the trial court from challenging the statements

2. Rule 44, Federal Rules of Civil Procedure, 28 U.S.C.A. made applicable to criminal proceedings by Rule 27, Federal Rules of Criminal Procedure, 18 U.S.C. A.

in the hearing officer's report.[3] Connected with this is the charge that appellant had no opportunity to examine the FBI investigatory report until immediately prior to the trial.

Since the opinion of the Supreme Court in the combined cases of United States v. Nugent and United States v. Packer, 73 S. Ct. 991, there is no longer any possible doubt but that "* * * the statutory scheme for review, within the selective service system, of exemptions claimed by conscientious objectors entitles them to no guarantee that the FBI reports must be produced for their inspection." 73 S.Ct. at page 994.

With reference to what transpired at the trial in connection with the hearing officer's report, the record reveals that for some time prior to trial appellant and his lawyers were in possession of a full copy of the board file as returned to the local tribunal by the appellate body. That file included a copy of the hearing officer's report. The latter in turn contained a lengthy summary of the FBI report which alone takes up seven typewritten pages of the appendix. At the direction of the district judge the FBI report was actually furnished the defense in court just before the start of the trial.

At the trial the government witnesses were the clerk of the local board who had registrant's file and an army officer who testified that Borisuk had refused to submit himself to induction. The first defense witness was the executive secretary for the New Jersey Baptist Convention. He testified that the Baptist Church has never taken an official position regarding participation in war and that it left its members to their own individual judgment on that question. The next witness was the minister of registrant's church. He was called, counsel stated, because "* * * there was a report issued by a hearing officer which is part of the Selective Service file and which entered into the consideration of the appeal board, and in that report there is a statement questioning the sincerity of the defendant. * * * now we are bringing in evidence to show the report was wrong." The report unmistakably identifies this witness as one of those interviewed by the FBI, it synopsizes his testimony, which was very favorable to registrant, and states concerning him and his evidence, "While this Pastor is not a conscientious objector himself, and thinks Andrew's beliefs to be wrong, the Pastor has no doubt of Andrew's sincerity." The other purpose in calling the witness was "* * * to show the background of the family." The hearing officer's report went into this phase of the Pastor's testimony fully. He had known the family over ten years, "* * * they are good church goers including Andrew." He confirmed "* * * the fact that all of the Borisuk children are attending college and trying to make the best of their opportunities."

3. Under the statute, 50 U.S.C.A.Appendix, § 456(j), where a conscientious objection is filed with the local board and rejected by that body the registrant's file is sent to the appeal board. The latter then refers the claim to the Department of Justice for inquiry and hearing. The Department "* * * after appropriate inquiry, shall hold a hearing with respect to the character and good faith of the objections of the person concerned, and such person shall be notified of the time and place of such hearing." The hearing officer conducts such hearing for the Department. "Upon request therefor by the registrant at any time after receipt by him of the notice of hearing and before the date set for the hearing, the hearing officer will advise the registrant as to the general nature and character of any evidence in his possession which is unfavorable to, and tends to defeat, the claim of the registrant, such request being granted to enable the registrant more fully to prepare to answer and refute at the hearing such unfavorable evidence." (Instructions issued by the Office of the Attorney General). The hearing officer's report of the hearing is forwarded by the Department. That report and the Department's advisory opinion as to the objection is then sent to the appeal board for its file. "Upon receipt of the report of the Department of Justice, the appeal board shall determine the classification of the registrant, and in its determination it shall give consideration to, but it shall not be bound to follow, the recommendation of the Department of Justice * * *." 32 C.F.R. Sec. 1626.25(4) (d).

The above witness was not produced by registrant before the hearing officer but it is obvious from the latter's report that he accepted him as one who believed in registrant's sincerity and who considered that registrant had a good family background. The court refused to hear a repetition of that testimony. This was not materially prejudicial to registrant. The evidence had been considered by the hearing officer. It did not contradict registrant's statements in his questionnaire.

Counsel then said that she had intended to call Dean Boocock of Rutgers to prove Rutgers requirements with regard to R.O.T.C.; that defendant took it as part of a required course not knowing he could be given conscientious objector status; " * * how the Dean was satisfied that this boy was a sincere, conscientious objector," and that he had only received one warning notice on scholarship which came in the second half of the second year, "the hardest year of the whole four years." Dean Boocock, though not mentioned by name, appears in the hearing officer's report as a Rutgers dean whom the registrant had given as a reference. He is the only reference named by appellant in his conscientious objector form, with the exception of his father and mother. The hearing officer states that the dean " * * * believes that registrant has religious convictions against killing; that war is wrong and that registrant is sincere in this." The rejection by the court of the dean's testimony did no real harm to the registrant. Though this witness had not been brought before the hearing officer by the registrant his evidence as detailed by the FBI had been favorably received and reported. It did not, however, materially affect registrant's own story as told by him in S.S.S. Form 150.

■■ Two professors, who had successively been in charge of the Rutgers dairy, and a herdsman at the dairy were offered as witnesses, presumably in connection with discussions that had taken place at the dairy while registrant was in attendance there. Those witnesses were excluded but that type of testimony would have had no bearing on the questionnaire evidence. Concerning it, the hearing officer in his report had said that he " * * * sees nothing adverse to registrant in the discussions and arguments instigated by registrant at the Rutgers dairy barn, even though these arguments resulted in a slackening of the work that was being done." Four fellow students were offered, all of them, apparently, to testify favorably to the defendant's character, reputation and industry. That testimony was also rejected by the court as immaterial. It was not opposed to registrant's statements in his questionnaire.

The defendant was not called as a witness; neither was his mother, who had impressed the hearing officer as a fine person. The father was not called, either at the trial or before the hearing officer. As to him, the hearing officer commented that he appeared to be as highly regarded as his wife. Borisuk's father and mother with Dean Boocock had been listed by him in S.S.S. Form 150 as the persons who could supply information as to the sincerity of his professed convictions against participation in war.

■■ There were three other concrete objections with respect to the hearing officer's report. The first had to do with the notation that the registrant, in answer to a query, said that he would not accept noncombatant service if it meant being under military orders. The comment of the hearing officer that, "He has, therefore, now definitely ruled himself out of any I-A-O classification," is flatly represented as indicating that registrant was considered a sincere conscientious objector because of religious training and belief. This is wrong on its face. The hearing officer plainly meant that registrant by affirmatively refusing noncombatant service eliminated it from consideration as a possible solution for that reason alone and that there was no object in pursuing that question further. The second arises out of the hearing officer's acceptance of the proposition that registrant's membership in a religious group which does not hold that its members should be conscientiously opposed to military service is no bar to his claim to conscientious objection based on his personal religion. However, the foundation for that kind of ob-

jection, said the hearing officer, must be a very deep personal religion and ' "* * no strong religious basis for registrant's views has been shown." Appellant urges that this is incompatible with the statutory direction that the conscientious objection must be founded upon religious training and belief. The contention is discussed infra. The third item of the report to which exception is taken is the reference to a statement of a person interviewed by the FBI who in general seemed to think well of registrant. He said that registrant had no objection to butchering animals. The fact is not denied but the incident is argued, on behalf of appellant, in conjunction with the other comments on the hearing officer's report, as showing that the hearing officer misconstrued the Act by taking into account what appellant calls "irrelevant issues." The contention is utterly lacking in merit. A careful examination of the report makes it very clear that the hearing officer not only was thoroughly familiar with the Act, particularly with his own function under it, but conducted an eminently fair and objective hearing. That hearing, as the Nugent-Packer opinion states at page 996 of 73 S.Ct. was not "the determinative hearing" but part of " * * an auxiliary service to the appeal board in this difficult class of cases * * * to provide for a more exhaustive processing of the conscientious objector's appeal." 73 S.Ct. at page 996.

We are satisfied that there were no circumstances associated with the hearing officer's report, its use or the rulings of the trial court with regard to evidence relating to it which were substantially prejudicial to Borisuk.

Primarily from appellant's own statements in his questionnaire, the court determined that the board had functioned lawfully. Those statements were never denied by Borisuk. There is an attempt by counsel on this appeal to explain why registrant was unable to answer the question asking him to describe his actions and behavior which most conspicuously demonstrated the consistency and depth of his religious conviction, and why he answered "No" when asked if he had ever given public expres-

sion to his claimed views. But there is no repudiation by Borisuk of the evidence from which the court concluded that the board's decision was in accordance with the statute; nor is there any effort by Borisuk's attorneys to justify that evidence. The only explanation suggested for registrant's joining the R.O.T.C. at Rutgers is that it was "a required course". This corroborates what registrant said in his S.S.S. Form 150. At best it conveys the thought that he was under the impression that to attend Rutgers it was compulsory to join the military service and for that reason he did so. His motivation points strongly to a lack of the sincere religious belief opposing war which must be present to sustain the type of claim at bar where the evidence is that registrant's religious group gave its members freedom of choice on the question of conscientious objection to military service. It was this kind of belief to which the hearing officer had referred.

There was nothing else in the other evidence tendered by the defense which offset the statements by Borisuk in his questionnaire. It was that evidence which was relied on by the court. And it came from the defendant himself as disclosed in S.S.S. Form 150, which document had always been available for inspection. Borisuk never contradicted any of it. Testimony on his behalf confirms his answer in the questionnaire on the position of his church re conscientious objection to war service and substantiates the other vital information in the questionnaire which was considered important by the court, e. g., the R.O.T.C. answer. Whatever procedural error there may have been in excluding the suggested defense testimony, it was not of such a nature or magnitude as to render the trial unfair.

Within the same caption of deprivation of due process appellant asserts that "The Court acted as advocate for the prosecution." This is not borne out by the record. Appellant's main complaint under the point seems to be that the court denied the defense motions for dismissal of the indictment, for acquittal and for arrest of judgment without calling on the government to reply. The transcript reveals that the motions were correctly decided and that

there was no need for additional argument. The fact that the court in its conclusions disagreed with counsel's thought of how these matters should be passed upon is hardly a valid reason of itself for reversal of this judgment.

We have examined appellant's remaining points. They are without merit and require no discussion.

The judgment of the district court will be affirmed.