UNITED STATES of America, Appellee,

v.

Jerry Paul PRITCHARD, Appellant.

No. 12974.

United States Court of Appeals
Fourth Circuit.

Argued April 11, 1969.

Decided June 23, 1969.

R. Mayne Albright, Raleigh, N. C., for appellant.

W. Arnold Smith, Asst. U. S. Atty., (Robert H. Cowen, U. S. Atty., on brief), for appellee.

Before BRYAN, WINTER and BUTZNER, Circuit Judges.

BUTZNER, Circuit Judge:

Jerry Paul Pritchard appeals his conviction for refusing to be inducted into the armed forces in violation of 50 U.S. C. App. § 462(a). We affirm.

Pritchard completed a selective service classification questionnaire for his local board in July 1963. He was granted a II–S classification while attending North Carolina State University. After leaving college and being classified I–A in February 1966, Pritchard applied for classification as a conscientious objector. 50 U.S.C. App. § 456(j). When this was denied, he sought a personal appearance, at which he presented a lengthy explanation of his beliefs. Again classified I–A, he appealed. The appeal board asked the Department of Justice for an advisory opinion. 50 U.S.C. App. § 456(j).[1] After an investigation by the F.B.I., the Department conducted a hearing at which Pritchard presented his case. Subsequently, the hearing officer recommended that Pritchard be granted conscientious objector status. This recommendation, however, was rejected by the Department's conscientious objector section, and a final recommendation; adverse to Pritchard, was sent to him and the appeal board. A résumé of the F.B. I. investigation was also sent. Prit-

---

1. The Military Selective Service Act of 1967 amended § 456(j) to eliminate the requirement for a hearing by the Department of Justice.

chard was allowed thirty days in which to reply, 32 C.F.R. § 1626.25(e) (1967 ed.), and he did so. Later he was again classified I–A and ordered for induction, which he refused.

Pritchard argues that it was a violation of due process for the Department not to send him and the appeal board a copy of the hearing officer's favorable report. And he claims errors in the Department's recommendation to the appeal board made his I–A classification arbitrary and capricious.

In Gonzales v. United States, 348 U.S. 407, 75 S.Ct. 409, 99 L.Ed. 467 (1955), the Supreme Court held that § 6(j) of the Universal Military Training and Service Act and its implementing regulations required that a copy of the Department's recommendation to the appeal board be furnished the registrant and that he be afforded an opportunity to reply. Only this reading of the statute and the regulations, the Court concluded, was compatible with procedural due process.

■■ However, due process does not require that the hearing officer's report be furnished the registrant or the appeal board. This was the holding in a second *Gonzales* case, which denied a claim similar to Pritchard's on the ground that the report is but a part of the whole intradepartmental process that leads to the final recommendation to the appeal board. The requirements of due process are satisfied when the registrant has a reasonable opportunity, which Pritchard had here, to contest before the appeal board statements appearing in the Department's recommendation. Gonzales v. United States, 364 U.S. 59, 80 S.Ct. 1554, 4 L.Ed.2d 1569 (1960).

*Gonzales II* recognizes that in exceptional circumstances fairness might require production of the report,[2] but this is not such a case. The Department's recommendation referred to Pritchard's hearing, set forth the findings of the hearing officer that were favorable to Pritchard, and noted his conclusion that Pritchard should be exempt from combatant and noncombatant service. Pritchard has failed to show why this summary was inadequate.

■ The Department's recommendation contained factual errors, which Pritchard says made his I–A classification arbitrary and capricious. It stated that Pritchard joined the church in 1965, when it was actually 1955. And it mistakenly cited the minister of his church for a statement, actually made by a member of the congregation, that Pritchard "was not an obviously religious individual and took no active part in the church activities other than attending at religious worship." The short answer to this contention is that Pritchard was furnished a copy of the Department's recommendation as well as a résumé of the investigation and granted thirty days in which to correct any mistakes. Furthermore, Pritchard took advantage of the opportunity and sent a rebuttal which the appeal board was required to consider. 32 C.F.R. § 1626.25(e) (1967 ed.). He noted the error in the attribution of the statement. The board could verify this information because it was correct in the résumé. Pritchard apparently overlooked the error in the date that he joined the church. But the correct date had been given on his conscientious objector form.

In any event, a fair reading of the Department's recommendation and the résumé, to which it frequently referred, shows that Pritchard's classification did not turn on the date he joined the church or the source of information about his church activities. Emphasis was placed on other factors, which, we find, constituted a basis in fact for his I–A classification.

■ Judicial review of a draft board's classification is limited to determining whether it had a basis in fact.

2. Gonzales v. United States, 364 U.S. 59, 65, 80 S.Ct. 1554, 4 L.Ed.2d 1569 (1960). Exceptional circumstances were present in United States v. Purvis, 403 F.2d 555 (2d Cir. 1968).

Estep v. United States, 327 U.S. 114, 122, 66 S.Ct. 423, 90 L.Ed. 567 (1946). And that means in the case of a conscientious objector, where "the issue is the registrant's sincerity and good faith belief, then there must be some inference of insincerity or bad faith." Witmer v. United States, 348 U.S. 375, 382, 75 S.Ct. 392, 396, 99 L.Ed. 428 (1955). When conflicting inferences can be drawn from the same evidence, there is a basis in fact, and the courts are not free to say that a board's denial of conscientious objector status was wrong. That is the situation here.

■ Pritchard's first claim to conscientious objector status was made two and a half years after he had filed his classification questionnaire and at a time when he had lost his student deferment and been classified I–A. Yet he claimed at his personal appearance that he had been opposed to war and service in the armed forces ever "since he was old enough to realize what war is." Also, Pritchard had participated in ROTC during his first year at college without complaint. He explained that he took ROTC only because it was a required course at the college to which he had a scholarship and that he did not feel he was "serving" the military in ROTC. Also, most of the eleven people interviewed who knew Pritchard well were impressed by his sincerity. But only two remembered his saying anything in opposition to participation in war, and the more specific of the two knew Pritchard only after he had made his claim as a conscientious objector. These inconsistencies, taken together, constitute a basis in fact for Pritchard's I–A classification. See United States v. Corliss, 280 F.2d 808, 812 (2d Cir.), *cert. denied,* 364 U.S. 884, 81 S.Ct. 167, 5 L.Ed.2d 105 (1960); Campbell v. United States, 221 F.2d 454, 457 (4th Cir.1955); United States v. Borisuk, 206 F.2d 338, 343 (3d Cir.1953).

Finally, we find that the district judge did not abuse his discretion in denying a continuance. We have examined the other contentions Pritchard makes and conclude they do not require reversal.

Affirmed.

WINTER, Circuit Judge (dissenting):

In our limited review of determining whether there is a basis in fact for a local board's classification, I do not think that we should overlook and not correct possible manifest injustices. In this case the appeal board assigned no reason for its action, other than the overall conclusory one that defendant was not entitled to be classified as a conscientious objector. The record as I read it shows that the board may have acted on concededly erroneous, and to my mind highly prejudicial, data—not simply that which was disputed but essentially correct. I would, therefore, overturn the conviction and remit to the local board for a redetermination of defendant's proper classification on a proper record, whether he should again be ordered to report, and if so, for what type of service, etc., on a correct factual basis.

The facts the majority sufficiently states. The hearing officer's report, which was favorable to defendant's claim that he was a conscientious objector, was not made available to defendant. Some of the erroneous statements had had their genesis in erroneous statements in the report of the F.B.I. investigation. The recommendation of the Department of Justice that defendant be denied status as a conscientious objector repeated the F.B.I.'s erroneous statements as to the date verbatim. Again, defendant was given no opportunity to expose the errors before the Department.

The principal errors were two-fold: First, it was said, in both documents, that defendant, the son of a Methodist minister, did not join the church of his father's faith until 1965, until he was 23 years of age. The fact is that he joined in 1955, when he was 13 years old.[1]

1. The correct date was in the defendant's Selective Service file transmitted to the

Department of Justice. That the correct date was ignored is the only inference

Second, the present minister of the church at Rich Square, North Carolina, where defendant's father had formerly been pastor, was erroneously reported in the Department's report and recommendation as having said that defendant "was not an obviously religious individual and took no active part in the church activities other than attending at religious worship." In fact, the statement was made by a member of the congregation at the home of his parents in Cordova, North Carolina, and there was no evidence to show that the informant had the special and specific knowledge that might be expected to be possessed by a spiritual leader, particularly since defendant was attending college in Raleigh, North Carolina, when the inquiry was made.

Reference need be made only to the statute defining a conscientious objector to be one "who, *by reason of religious training and belief*, is conscientiously opposed to participation in war in any form" (emphasis supplied), 50 U.S.C.A. App. § 456(j), to show the highly prejudicial effect of these misstatements. One may be a conscientious objector without adherence to the beliefs of an organized religion, United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed. 2d 733 (1965), but how damning, for a registrant of defendant's singular background, is the data that he unduly postponed embracing the faith of his father and that he is known to a spiritual leader as "not an obviously religious individual."

The report of the Department of Justice, recommending that defendant not be classified as a conscientious objector, may be read repeatedly, but in vain, for any clue as to the extent to which the recommendation rests, in whole or in part, upon the misstatements. From their nature, I can hardly suppose that they were ignored. *Cf.*, Sicurella v. United States, 348 U.S. 385, 75 S.Ct. 403, 99 L.Ed. 436 (1955).

It is true that defendant was given the opportunity to correct the errors when the Department's report and recommendation were in the hands of the Appeal Board and that he availed himself of this opportunity by writing to that body. But by then uncorrectable prejudice had intervened. If it is assumed that the Appeal Board believed defendant, it could not determine how the Department's recommendation was thereby affected, and that recommendation continued as evidence of the greatest weight that the defendant's claim should be denied. United States v. Purvis, 403 F.2d 555, 562 (2 Cir.1968); United States v. Gearey, 368 F.2d 144, 148 (2 Cir.1966). See, MacMurray v. United States, 330 F.2d 928, 930–931 (9 Cir.1964). It seems to me that akin to United States v. Purvis, *supra*, 403 F.2d at 562, and the implicit concept of Gonzales v. United States, 364 U.S. 59, 64, 80 S.Ct. 1554, 4 L.Ed.2d 1569 (1960), we should not permit defendant's conviction to stand when he had no *effective* opportunity to rebut the misstatements which went to the heart of his claim. I incline to the view that due process requires no less.

Because we cannot determine with any reasonable assurance whether defendant was denied his claim of conscientious objection on an improper basis, I see no necessity of deciding whether the local board *might* properly have denied the claim, or, stated otherwise, whether there was a basis in fact for its action. Sicurella v. United States, *supra*. But the majority dwells on this aspect of the case, concluding that there was a threefold inconsistency in the history of de-

that can be drawn from the fact that the date was *incorrectly* stated in the F.B.I. report and the Department's report and recommendation to the Appeal Board. This double repetition foreclosed any claim of typographical error. While no one knows what was in the hearing

officer's report because the report is apparently not available, the possibility that the F.B.I. and the Department of Justice both made identical errors but the hearing officer did not is too remote to be considered.

fendant's actions; and I am accordingly constrained to discuss them. I conclude that the majority builds on slender reeds.

Quoting the local board's paraphrase of defendant's remarks entered into his records, the majority states that defendant said that he had opposed war "since he was old enough to realize what war is." By legerdemain to which I do not subscribe, this statement is deemed inconsistent with his failure to claim conscientious objector status until two and one-half years after he filed his classification questionnaire. Absent proof of the age of defendant to which he referred as the time when he realized what war is—and there is none, the conclusion does not flow from the premise.

To my mind, defendant sufficiently explained his participation in ROTC unless he is deemed not credible. Significantly, the local board made no specific credibility finding. Defendant participated in ROTC because he was a scholarship student at a particular university, was interested in a specialized field offered at few institutions of higher learning and ROTC was compulsory at the one he selected. Other than minimal training, he played in the ROTC band. He explained his participation on the ground that he "knew of no way that the military establishment could benefit from my attending class, and so did not actively oppose 'the requirement." *Cf.*, United States v. Borisuk, 206 F.2d 338 (3 Cir.1953).

That only two of the eleven people who knew defendant well who were interviewed remembered his saying anything in opposition to participation in war does not demonstrate any inconsistency in defendant's position. That a registrant is outspoken on the subject may be of significance, although there is the danger, if this is made the test, of generating self-serving statements rather than expressions of true conscience; that he is silent, or nearly silent, is of none. In a question so strictly a matter of conscience, infrequent expression, if not total silence, of one's views is not so

startling or unusual as to constitute negative evidence of the *bona fides* of sincerity in the absence of proof of inconsistent expression of more conventional views. The point is that some people having acute and deep personal feelings speak freely and even proselytize, others do not; but the individual's conduct, unless it is internally inconsistent, is no measure of the depth of his sincerity.

I respectfully dissent.