412 F.2d 1137
 UNITED STATES of America ex rel. Peter S. BROOKS, Appellant,
v.
Clark CLIFFORD, Secretary of Defense, Stanley R. Resor, Secretary of the Army, and Commanding Officer, Fort Jackson, South Carolina, Appellees.
 No. 13275.
 United States Court of Appeals Fourth Circuit.
 Argued March 6, 1969.
 Decided June 25, 1969.
 
 Leonard B. Boudin, New York City (Rabinowitz, Boudin & Standard, Joan Goldberg, New York City, and Jack McGuinn, Columbia, S. C., on brief) for appellant.
 Wistar D. Stuckey, Asst. U. S. Atty. (Klyde Robinson, U. S. Atty., on brief) for appellees.
 Before WINTER, CRAVEN and BUTZNER, Circuit Judges.
 WINTER, Circuit Judge:
 In the original briefs and in argument the parties touched peripherally upon the question of whether petitioner had exhausted his administrative remedies when he failed to apply to the Army Board for Correction of Military Records for discharge as a conscientious objector before seeking a writ of habeas corpus from the district court. We gave the question no fuller treatment.
 Unbeknown to the parties and to us, the United States Court of Appeals for the Ninth Circuit had decided on March 5, 1969, the day before argument in our case, that a member of the Navy, whose application for discharge as a conscientious objector had been denied by the Chief of Naval Personnel, could not seek a writ of habeas corpus from a district court to review that denial when he had failed to apply to the Board for Correction of Naval Records for relief. Craycroft v. Ferrall, 408 F.2d 587 (9 Cir. 1969). Promptly after our decision was announced, respondents petitioned for rehearing solely on the exhaustion point, citing only Craycroft. We directed the parties to file briefs on the issue. After consideration of them, we have concluded to deny rehearing.
 Petitioner, after his request for discharge was denied by the Department of the Army, made no application to the Army Board for correction of Military Records. This Board is one of several authorized by 10 U.S.C.A. § 1552 to be established by the Secretary of a military department, with the approval of the Secretary of Defense, and the Secretary of the Treasury, to act for them to "correct any military record of that department when he considers it necessary to correct an error or remove an injustice." From the papers filed with us, it appears that, even after Craycroft, the Board for Correction of Naval Records and the Secretary of the Navy "have determined that the case of a member [of the naval service] who has been denied a discharge as a conscientious objector is not properly a matter for consideration by the Board." The Army counterpart, however, claims jurisdiction in such cases. Negre v. Larsen, 394 U.S. 968, 89 S.Ct. 1450, 22 L.Ed.2d 750 (April 21, 1969) (Douglas, J. dissenting). The position of the Board for the Coast Guard and Air Force is unknown.
 
 
 1
 We do not find it necessary to discuss fully our analysis of the decision in Craycroft, because we think that a close reading of the recent decision in McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (May 26, 1969), decided after Craycroft and after the briefs of the parties addressed to exhaustion of administrative remedies were filed, and application of its principles to the facts before us indicate the result we reach.[1] In McKart the Court was concerned with the sole surviving son exemption of the Selective Service Act of 1948, and particularly whether petitioner was entitled to exemption after the death of his mother, when he had no surviving family. Petitioner had been denied the exemption by his local board and he had failed to avail himself of the appeal procedures established by Selective Service System Regulations. In a subsequent prosecution for failing to report for and submit to induction, the government contended that the petitioner could not raise the invalidity of his I-A classification and subsequent induction order because he had failed to appeal his reclassification after the death of his mother and thus had failed to exhaust available administrative remedies.
 
 
 2
 The Court rejected the government's contention and discussed carefully the scope and application of the exhaustion doctrine. It was said first that the "[a]pplication of the doctrine to specific cases requires an understanding of its purposes and of the particular administrative scheme involved." Proceeding with that thesis, the Court noted first that the most common application of the exhaustion doctrine is where it is statutorily required. Where a statute does not require exhaustion, the rationale of judicial invocation of the doctrine is to avoid premature interruption of the administrative process, thereby preserving the integrity and autonomy of the agency — particularly where the administrative agency has vested in it discretionary powers or is intended to apply its expertise to the problem before it. Related to the concept of administrative autonomy are the notions that the administrative agency should be given a chance "to discover and correct its own errors" and that overly frequent interruptions of administrative processes may encourage parties to ignore contemplated administrative procedures. 395 U.S. at 195, 89 S.Ct. at 1663.
 
 
 3
 Another aspect of the doctrine is that judicial review "may be hindered by the failure of the litigant to allow the agency to make a factual record, or to exercise its discretion of apply its expertise." 395 U.S. at 194, 89 S.Ct. at 1663. An independent consideration arises from "practical notions of judicial efficiency," in that a complaining party may be successful in his pursuit of administrative remedies so that courts are not called upon to exercise their jurisdiction. 395 U.S. at 195, 89 S.Ct. at 1657.
 
 
 4
 In the McKart case the Court recognized that the exhaustion doctrine "must be tailored to fit the peculiarities of the administrative system Congress has created." 395 U.S. at 195, 89 S.Ct. at 1663. The Court was impressed with the fact that petitioner no longer had a right to appeal and could assert the invalidity of his classification and order to report for induction only at the peril of his liberty. The Court pointed out that the question before it was solely one of statutory interpretation involving no particular expertise on the part of the appeal board and involving no discretion. Even if the appeal board passed upon the question of statutory interpretation, "judicial review would not be significantly aided * * *." 395 U.S. at 199, 89 S.Ct. at 1665. Finally, the Court rejected the government's argument that failure to require exhaustion would induce registrants to by-pass available administrative remedies because the Court felt that the presence of criminal sanctions in a prosecution for failure to report would insure "that the great majority of registrants will exhaust all administrative remedies before deciding whether or not to continue the challenge to their classifications." 395 U.S. at 200, 89 S.Ct. at 1666. For a thorough pre-McKart discussion of these general principles, see Sherman, Judicial Review of Military Determinations and the Exhaustion of Remedies Requirement, 55 Va.L.Rev. 483, 520-26 (1969), particularly ft. 197, p. 524.
 
 
 5
 Consideration of these principles and the application of them to the facts before us lead to the same conclusions.
 
 
 6
 Neither D.O.D. No. 1300.6 nor A.R. 635-20, under which petitioner sought his discharge, provides for or contemplates an application to the Army Board for Correction of Military Records in the event of denial of the request by the Department of the Army, although neither specifically precludes it. So far as these regulations are concerned, unlike those in McKart, the administrative process was complete and completed on December 13, 1968, except for notification of petitioner, when his request for discharge as a conscientious objector was denied. Within the contemplation of these regulations, the administrative process would neither be interrupted nor its integrity violated if judicial review were held permissible immediately after the Department of the Army refused a request for discharge.
 
 
 7
 Although we do not decide the question, it is at least arguable that a military board for correction of records established under 10 U.S.C.A. § 1552 does not have jurisdiction to grant relief in an appropriate case; the differing interpretations of the Army and Navy are witness to the fact. The legislative history of § 1552, as well as the provisions of the statute, indicate that the basic purpose of the statute was to relieve Congress from consideration of private bills to correct injustices, usually of the type involving an appropriation of money — subjects far different from the adjudication of a claim of conscientious objection.[2] It has been held that § 1552 was not intended to affect judicial jurisdiction. Nelson v. Miller, 373 F.2d 474, 479 (3 Cir. 1967); Ogden v. Zuckert, 111 U.S.App.D.C. 398, 298 F.2d 312, 314 (1961).
 
 
 8
 Even if the legislative intent is determined not to foreclose exercise of this type of jurisdiction under the broad mandate to "correct an error or remove an injustice," the Board for Correction is not presumed to have any particular expertise in conscientious objection matters, nor would its decision involve the exercise of discretion. While the Army Board for Correction of Military Records, established under 32 C.F.R. § 581.3, promulgated pursuant to the statute, may grant a hearing, in which event the applicant has the right to produce witnesses if he can arrange for their appearance at the time and place set for the hearing, the Board is composed of civilian officers or employees of the Department of the Army. By contrast, the procedure established by D.O.D. No. 1300.6 and A.R. 635-20 provides for an appearance before a person "knowledgeable in policies and procedures relating to conscientious objector matters." Thus, the only expertise which is brought into consideration of a claim of conscientious objection is interjected well before the possible hearing which the Army Board may grant; and the significant record, in a case like that at bar, is the one made before the Department of the Army takes final action. Moreover, like McKart, the issue here, once petitioner's detailed request for discharge was filed and the initial record before the interviewing officers was made, was one of law, i. e., whether the facts sustained the claim of conscientious objection in the light of applicable legal principles. Judicial review would not be aided by the views of the Army Board on this question.
 
 
 9
 In short, we conclude that no injury whatever is done to the Army's administrative apparatus by our sanction of judicial review in the instant case.
 
 
 10
 Unlike McKart, petitioner here is not required to litigate administratively under threat of a possible jail sentence. He has not lost his right to apply to the Army Board because limitations have not run, 10 U.S.C.A. § 1552(b), and we could retain jurisdiction and stay all proceedings pending his application now to the Army Board. Conceivably, such an application could result in the granting of his request. But for this petitioner, judicial efficiency would not thereby be promoted; we have already decided the merits of his case. Perhaps such a procedure would promote overall judicial efficiency if it resulted in a determination that the Army Board's claim of jurisdiction was well-founded and thus that the Army Board would provide a speedy and effective remedy. Presumably then the Army Board would grant relief in at least some meritorious cases and obviate the necessity for judicial intervention. However, before yielding to the argument of judicial efficiency (and recognizing that the argument is illusory with respect to those who may be denied relief by the Board for Correction), we must consider whether this interest clearly outweighs the burdens which may be imposed upon the petitioner by the constant and continuous delays in the final determination of his claim. Cf., McKart, 395 U.S. at 185, 89 S.Ct. 1657.
 
 
 11
 As we have stated, the considerations of administrative expertise, integrity of the administrative process, respect for the administrative process, the making of a complete and satisfactory record for judicial review, have all been satisfied; administrative discretion is absent. Hence, judicial efficiency in the sense of the possibility of reducing the judicial case load is the sole consideration. Pitted against it is the fact that if petitioner's claim of conscientious objection is well-founded (and we have decided that it is), petitioner, and others similarly situated, will be required to litigate administratively during a period of which each hour of each day they are required to engage in conduct inimical to their consciences or be subject to court martial, with the added risk that in the ordinary course of the operations of the military, they may be ordered to a duty even more offensive to them. Such a result could be avoided only if the military were to deal with them individually and separately — treatment which the military by its very nature would find destructive to itself.
 
 
 12
 In data submitted to this Court, it is represented that the average time for decision of any case by the Army Board is approximately four months. The period may be shorter or longer in conscientious objection cases — more probably longer if the case load increases materially under the stimulus of Craycroft. By contrast, 28 U.S.C.A. § 2243, requires the award of the writ, or an order to show cause, "forthwith" after its filing. The return or the answer must be made within three days, or if good cause is shown, within not exceeding an additional twenty days. A hearing is required within five days after the return of the writ or answer, unless for good cause additional time is allowed. Thus, § 2243 requires a far speedier, and thus more effective, remedy than could be expected under § 1552, in the usual case.
 
 
 13
 On balance, we think that the weighing of the factors which would tend to promote judicial convenience against the burdens on petitioner, or any similarly situated serviceman, result in the conclusion that resort to the Army Board should not be required.[3] We, therefore, deny the petition for rehearing.
 
 
 14
 Rehearing denied.
 
 
 
 Notes:
 
 
 [1]
 We do not understand that the Court inMcKart has departed in any manner from the traditional principles underlying the judicially-created doctrine of exhaustion of administrative remedies, the essence of which is flexibility and not the blind application of the doctrine in every case. See generally, e. g., NLRB v. Industrial Union of Marine and Shipbuilding Workers, 391 U.S. 418, 426 n. 8, 88 S.Ct. 1717, 20 L.Ed.2d 706; Wills v. United States, 384 F.2d 943 (9 Cir. 1967); Lockhart v. United States, No. 21,311, 1 SSLR 3204 (9 Cir. 1968); Wolff v. Selective Service Local Board No. 16, 372 F.2d 817, 825 (2 Cir. 1967); Administrative Procedure Act, 5 U.S.C.A. § 704; 3 Davis, Administrative Law Treatise, §§ 20.01-20.10 (1958). We emphasize the recent decision in McKart v. United States because it is the latest authoritative enunciation of the traditional principles and involves an area closely akin to the subject matter of the instant case. We are satisfied that when the principles, restated in McKart, are correctly applied, an opposite result from Craycroft follows.
 
 
 [2]
 House Report No. 449, 82d Cong. 1st Sess. (May 15, 1951); Hearings of the House Armed Services Committee on H. R. 1181, 82d Cong., 1st Sess. (1951) p. 600; Hearings of a Subcommittee of the Senate Committee on Armed Services, Authorizing Payment of Claims Arising From Correction of Military and Naval Records, H.R. 1181, 82d Cong., 1st Sess. (1951); Senate Report No. 923, 82d Cong. 1st Sess. (Oct. 8, 1951). See also, Jones, Jurisdiction of the Federal Courts to Review the Character of Military Administrative Discharges, 57 Colum.L.Rev. 917 (1957); Redd, The Board for Correction of Naval Records, 19 JAG J. 9 (1964)
 
 
 [3]
 We note that this isnot a case such as Gusik v. Schilder, 340 U.S. 128, 71 S.Ct. 149, 95 L.Ed. 146 (1950), or Hammond v. Lenfest, 398 F.2d 705 (2 Cir. 1968), in which, while civil litigation was pending, new and explicit regulations were adopted to deal expeditiously with the precise issues before the Court. We further note in Hammond the Court recorded the fact that the government had abandoned the argument that exhaustion compelled resort to the Board for Correction. 398 F.2d at 713 n. 12.
 
 
 BUTZNER, Circuit Judge (dissenting):
 
 15
 I dissent from the denial of rehearing, but I hasten to add that my differences with the carefully considered majority opinion are indeed narrow. We both recognize that a soldier who applies for a writ of habeas corpus alleging that he is a conscientious objector must first exhaust administrative remedies. Cf. Noyd v. Bond, 395 U.S. 683, 89 S.Ct. 1876, 23 L.Ed.2d 631 (June 16, 1969); Gusik v. Schilder, 340 U.S. 128, 131, 71 S.Ct. 149, 95 L.Ed. 146 (1950); Negre v. Larsen, 394 U.S. 968, 89 S.Ct. 1450, 22 L.Ed.2d 750 (April 21, 1969) (Douglas, J., dissenting). The sole point of division is whether the Army Board for the Correction of Military Records should be accorded judicial recognition as an administrative forum for decision of the controversies that are bound to arise when soliders claim they are conscientious objectors and army officials rule they are not. I believe that this function of the board should be respected by the courts and that the judiciary should not intervene until the board has acted.
 
 
 16
 I start with the Act that created the board, 10 U.S.C. § 1552(a). It specifically authorizes the Secretary of a military department acting through boards of civilians to "correct any military record * * * when he considers it necessary to correct an error or remove an injustice." No one disputes that denial of a claim for conscientious objector status may constitute an injustice. The board recognizes this fact, and — with the concurrence of the Secretary of the Army — has undertaken to review these claims. A literal reading of the statute does not require us to deny the board jurisdiction or denounce the Secretary's concurrence.[1] To be sure, the board was created before any provision was made for the army to entertain applications from conscientious objectors. Consequently, it is not surprising that the legislative history does not deal with this facet of the board's duties. Nevertheless, nothing in the legislative history or in the regulations either pertaining to the board or to the procedures relating to applications for conscientious objector status forecloses this final administrative remedy. Craycroft v. Ferrall, 408 F.2d 587 (9th Cir. 1969).
 
 
 17
 McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (May 26, 1969), the most recent decision on administrative remedies with respect to a registrant for the draft, is not to the contrary. There it was held that the death of a registrant's mother did not deprive him of his exemption as a sole surviving son. In reaching this conclusion, the Court rejected the government's contention that the registrant's failure to appeal his reclassification after the death of his mother barred all judicial review. The distinctions between McKart and the problem before us are substantial. In McKart, insistence upon exhaustion of administrative remedies would have stripped the registrant of a meritorious defense to a criminal prosecution. Here, this harsh result will not occur. On the contrary, Brooks' failure to seek review before the board simply rendered his petition for a writ of habeas corpus premature. Brooks can yet apply to the board, and if his application is denied, he still can seek judicial relief.
 
 
 18
 Also, McKart's classification turned upon a statutory interpretation, which was not a matter of particular expertise on the part of the administrative forum or a matter of discretion. In contrast, the Court listed conscientious objector claims among the examples of questions requiring the application of expertise or the exercise of discretion. In such cases, the Court noted, there is a stronger interest in having the issues first decided by administrative tribunals. McKart v. United States, 395 U.S. 185, 198, 89 S.Ct. 1657, 1665 n. 16 (May 26, 1969).[2]
 
 
 19
 It has been suggested that the Boards for the Correction of Military Records may be inadequate for this task. See Sherman, Judicial Review of Military Determinations and the Exhaustion of Remedies Requirement, 55 Va.L.Rev. 483, 524 n. 197 (1969). But Brooks did not apply to the board, and on the scant record before us I believe it is impossible to say that the army board's procedure is so ill suited that it should be bypassed. Admittedly, the military and the courts have had comparatively little experience with servicemen's applications for discharge as conscientious objectors.[3] If in the future it is shown that the remedy afforded by the army board is illusory, of course, it need not be pursued. Marsh v. County School Bd. of Roanoke County, 305 F.2d 94, 98 (4th Cir. 1962); see Craycroft v. Ferrall, 408 F.2d 587, 599 n. 18 (9th Cir. 1969). However, I think that the present record is too frail a basis on which to fashion a precedent that this is so.
 
 
 20
 In Gusik v. Schilder, 340 U.S. 128, 133, 71 S.Ct. 149, 95 L.Ed. 146 (1950), the Court directed the district court to retain jurisdiction while a military prisoner resorted to an administrative remedy that became available while his petition for a writ of habeas corpus was pending. Following the teaching of that case, I would grant rehearing, vacate our judgment and that of the district court, remand the case to the district court with directions that it be held while Brooks appeals to the board. If his appeal is not successful, the district court can then consider his application in the light of the full administrative record.
 
 
 
 Notes:
 
 
 [1]
 The statute gives considerable autonomy to the Secretaries of the military departments. Therefore, the fact that the Secretary of the Navy has not designated the Navy Board for the Correction of Military Records as a reviewing agency for conscientious objectors' claims does not indicate that the Secretary of the Army acted contrary to the statute
 
 
 [2]
 Mr. Justice White emphasized in his concurring opinion, McKart v. United States, 395 U.S. 185, 204, 89 S.Ct. 1657, 1668 (May 26, 1969), McKart's case had been the subject of informal review at the highest levels of the Selective Service System. This served as sufficient justification to allow McKart to present his defense without showing that he had sought a formal review
 Mr. Justice Douglas, noting an analogy to Oestereich v. United States, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968), concurred because McKart had a statutory exemption that relieved him from pursuing "administrative remedies that are designed for quite different categories of cases." McKart v. United States, 395 U.S. 185, 204, 89 S.Ct. 1657, 1668 (May 26, 1969).
 
 
 [3]
 The army board's decision in a similar case was given approximately 90 days after it received the application. Memorandum for Respondent at 3, Negre v. Larsen, 394 U.S. 968, 89 S.Ct. 1450, 22 L.Ed.2d 750 (April 21, 1969). The Air Force Board for the Correction of Military Records granted relief to a conscientious objector who had been denied a discharge. David T. Bezouska, 1 SSLR 3163 (A.F. Bd. for Correc. of Mil. Rec., May 7, 1968), cited in Sherman, Judicial Review of Military Determinations and the Exhaustion of Remedies Requirement, 55 Va.L.Rev. 483, 524 n. 197 (1969)