**Tahan JONES, Petitioner,**

v.

**General Carl MUNDY, Jr., Commander, United States Marine Corps, et al., Respondents.**

**No. 91–854–HC–BO.**

United States District Court, E.D. North Carolina, Raleigh Division.

June 5, 1992.

---

M. Travis Payne, Edelstein, Payne & Nelson, Raleigh, N.C. and John Murcko, Oakland, Cal., for petitioner.

Eileen G. Coffey, Asst. U.S. Atty., Raleigh, N.C. and Gregory T. Mitchell, Gen. Litigation Div., Office of the Judge Advocate Gen., Dept. of Navy, Alexandria, Va., for respondents.

## ORDER

TERRENCE WILLIAM BOYLE, District Judge.

Petitioner Tahan Jones, a corporal in the United States Marine Corps Reserves, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241, on the grounds that he (1) was wrongfully denied discharge as a conscientious objector and (2) is currently being held on active duty in violation of Marine Corps regulations. This matter is before the court on respondents' motion for summary judgment.

### Statement of Facts

Petitioner Jones voluntarily enlisted in the United States Marine Corps Reserves in 1987 for an eight-year term. On October 27, 1990, he formally applied for conscientious objector ("CO") status and requested discharge from the Marines, just three months after President Bush issued Executive Order No. 12727 authorizing the mobilization of reserve forces to serve in the Persian Gulf conflict.

In accordance with Marine Corps regulations, an investigating officer was appointed to evaluate Corporal Jones' application. The investigating officer, after a hearing, recommended denial of conscientious objector status on February 4, 1991. The Marine Corps Conscientious Objector Screening Board then conducted a *de novo* review of Jones' application and also recommended denial of CO status. The Commandant of the Marine Corps, adopting the recommendation of the Conscientious Objector Screening Board, officially denied Jones' application on August 19, 1991.

On February 16, 1991, while Jones' application for CO status was pending, his bat-

talion was mobilized.[1] Petitioner failed to report as ordered to Yuma, Arizona, for predeployment training, and as a result the Marine Corps initiated charges against him for desertion and missing the movement of his military unit. He surrendered to military police on May 15, 1991, and is currently awaiting court-martial on these charges.

Petitioner filed this habeas action on December 23, 1991, contending he was wrongfully denied CO status and wrongfully ordered to active duty. He also seeks injunctive relief to prevent the military from proceeding with his court martial.

On January 3, 1992, the court ordered the respondents to show cause as to why the writ should not be issued. The respondents subsequently moved for summary judgment. A hearing was held on February 21, 1992. The parties have submitted the administrative record.

### Conclusions of Law

#### A. Petitioner's CO Application

▪ Federal district courts may entertain the habeas petitions of conscientious objectors under 28 U.S.C. § 2241. *Strait v. Laird*, 406 U.S. 341, 92 S.Ct. 1693, 32 L.Ed.2d 141 (1972). Review is limited to whether the military had a "basis in fact" for rejecting the petitioner's application for conscientious objector status. *U.S. v. Pritchard*, 413 F.2d 663 (4th Cir.1969). Review is also limited to the administrative

record. *Armstrong v. Laird*, 456 F.2d 521 (1st Cir.1972).[2]

The government moves for summary judgment, contending that a sufficient factual basis exists in the administrative record to support the Marines' decision.

▪ A Marine seeking CO status has to demonstrate by clear and convincing evidence that (1) he is conscientiously opposed to participation in war in any form; (2) his opposition is founded on religious training and belief; and (3) this position is sincere and deeply held. 32 C.F.R. §§ 75.5 and 76.6(d); Marine Corps Order 1306.16E, par. 4.b.; *Clay v. United States*, 403 U.S. 698, 91 S.Ct. 2068, 29 L.Ed.2d 810 (1971). In the present case, the Marine Corps Conscientious Objector Screening Board, whose findings the Commandant relied upon, determined that Private Jones' moral and ethical beliefs were neither sincere nor deeply held and that he was not conscientiously opposed to war in any form.

▪ This court is not charged with the duty of making a decision as to whether petitioner is a conscientious objector, but only of deciding whether the decision that was made is based in any way on facts that were before the military. *United States v. Pritchard*, 413 F.2d 663 (4th Cir.1969). The court finds that there are many facts in the record from which inferences could be properly drawn supporting the Commandant's decision. Petitioner, for example, stayed in the Marines several years before

---

1. At this time, petitioner was a member of the Selected Marine Corps Reserve, which provides the initial and primary source of augmentation of the active forces during a time of emergency when the national security requires additional military capability.

2. As a threshold matter, the government has moved to dismiss the petition on the grounds that Corporal Jones has failed to exhaust his administrative remedies within the military. Specifically, the government contends that although the Commandant of the Marines has denied petitioner's CO application, petitioner must still appeal to the Board for Correction of Naval Records (BCNR). The BCNR, if it finds probable material error or injustice in petitioner's claim, can recommend to the Secretary of the Navy that petitioner be discharged as a conscientious objector. 10 U.S.C. § 1552; 32 C.F.R. § 723.

The government is technically correct in that petitioner has not exhausted all possible admin-

istrative remedies. However, the doctrine of exhaustion in a military setting is a judge-made doctrine, not a jurisdictional requirement, and accordingly judges can shape it to fit the exigencies of a particular situation. *Kawitt v. United States*, 842 F.2d 951, 953 (7th Cir.1988). It is the well-established rule in this circuit that a serviceman can seek habeas relief as a conscientious objector once the commandant of his respective service has denied his CO application. *United States ex rel. Brooks v. Clifford*, 412 F.2d 1137 (4th Cir.1969). Further appeal to a board for correction of military records is not required, as the evidentiary record for judicial review is complete and the delay of additional administrative litigation will cause a conscientious objector irreparable harm. *Id.* at 1140–41.

Accordingly, the government's argument for dismissal on exhaustion grounds fails.

expressing his belief that he was a conscientious objector. He qualified for and accepted regular promotions during his service as a Marine reservist, the most recent occurring on July 1, 1990, just four months before President Bush's mobilization order. Petitioner's belief did not arise until he was faced with imminent deployment to an area of potential combat. *See, e.g., Koh v. Secretary of the Air Force*, 719 F.2d 1384 (9th Cir.1983) (timing of CO application can be a significant factor in denying applicant's claims).

Furthermore, petitioner used political speech and political justification in explaining his position on the "morality" of war, including criticism of U.S. foreign policy and use of force in Panama and the Persian Gulf. He was not a passivist and did not object to all use of force, but apparently only objected to the selective use of force based on goals that he did not agree with. *See, e.g., Gillette v. United States*, 401 U.S. 437, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971) (opposition solely to Vietnam War sufficient basis for denial of conscientious objector status).

Accordingly, the court finds that the Marine Corps had ample factual basis to deny petitioner's application for conscientious objector status.

*B. Petitioner's Mobilization*

■ Petitioner also seeks a writ of habeas corpus on the grounds that he was improperly called to active duty while his CO application was pending, in violation of his due process rights. In support of his contention, petitioner refers to Marine Corps Order 1306.16E, par. 6(k), which states that "[a] Marine reservist who applies for conscientious objector status will not normally be ordered to involuntary active duty until the application is resolved."

The court finds that the above regulation is not applicable to petitioner's situation. The phrase "ordered to involuntary active duty" is statutorily based, and refers to a specific administrative action taken only against individual members of the Selected Reserve who fail to satisfactorily participate in scheduled drill activities during the term of their obligated enlisted period. *See* 10 U.S.C. § 673a, 32 C.F.R. Part 100.

Overall, servicemen with pending applications for CO status must conform to the normal requirements of military service and perform satisfactorily the duties to which they are assigned. 32 C.F.R. § 75.-6(h); MCO 1306.16E, par. 6(j). On August 22, 1990, President Bush, pursuant to his authority under the Constitution and 10 U.S.C. §§ 121 and 673b, authorized the Secretary of Defense to order to active duty units of the Selected Reserve of the Armed Forces in support of military operations on the Arabian Peninsula. *See* Executive Order No. 12727 of August 22, 1990. As a member of Selected Reserve, petitioner was required to report for active duty when ordered to do so unless he was physically unable. *See* Secretary of Defense Memorandum of August 23, 1990, entitled "Call of Selected Reserve Units and Personnel to Active Duty." No applicable statute or regulation precluded petitioner's mobilization because of his self-declared status as a conscientious objector.

Accordingly, the court finds that petitioner was properly ordered to active duty and his current status comports with due process and statutory provisions. Petitioner's application for a writ of habeas corpus is DENIED. Petitioner's request for an injunction of his court martial is DENIED.

SO ORDERED.