**LEE COUNTY SCHOOL DISTRICT NUMBER 1, Board of Education of Lee County, South Carolina, W. Ray Alexander, Jr., Chairman, Don D. Grant, G. Hugh Montgomery, Leroy B. Dennis, Jr., John Houser, Jr., Ray Lyles, and B. K. Phillips, Members, and Boyd L. Stokes, Superintendent of Education of Lee County, South Carolina, Plaintiffs,**

v.

**John W. GARDNER, as Secretary of the Department of Health, Education, and Welfare, Harold Howe, II, as United States Commissioner of Education, Defendants.**

Civ. A. No. 66–718.

United States District Court
D. South Carolina,
Columbia Division.

Heard Dec. 21, 1966.

Decided Jan. 16, 1967.

---

Daniel R. McLeod, Atty. Gen., of South Carolina, Harry M. Lightsey, Jr., Asst. Atty. Gen., Columbia, S. C., and Dan F. Laney, Jr., Bishopville, S. C., for plaintiffs.

Terrell L. Glenn, U. S. Atty., Charles Porter, Asst. U. S. Atty., Columbia, S. C., and James W. Phillips, Dept. of Justice, Washington, D. C., for defendants.

HEMPHILL, District Judge.

The Board of Education of Lee County School District Number One, instituted this action against John W. Gardner, as Secretary of Health, Education and Welfare, and Harold Howe, II, as the United States Commissioner of Education. The matter before the court at this time is defendants' motion to dismiss. The defenses set forth in that motion, which shall be set forth more fully below, are that the action is one against the United States and is barred by the doctrine of sovereign immunity, and, alternatively, that no claim has been stated for which relief can be granted because available administrative remedies have not been exhausted.

The success or failure of the motion to dismiss is in this instance critically dependent on the precise issues raised by the complaint. The particular technical language of the complaint is, of course, that which brings before the court the injury for which the plaintiffs seek their remedy; however, for brevity, the factual allegations of the complaint can be summarized as follows.

In the past the plaintiffs have availed themselves of federal financial assistance in the form of grants for certain education programs and activities. Title VI of the Civil Rights Act of 1964 is headed "Nondiscrimination in Federally Assisted Programs," and under section 602[1] of

1. Section 602 of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000d–1, provides: Each Federal department and agency which is empowered to extend Federal financial assistance to any program or activity, by way of grant, loan, or contract other than a contract of insurance or guaranty, is authorized and direct-

that title certain regulations were promulgated and approved for the effectuation of Title VI. In March of 1966 Commissioner of Education [2] Howe issued the "Revised Statement of Policies for School Desegregation Plans Under Title VI of the Civil Rights Act of 1964." This imposing title has become familiarly known as the "guidelines." Prior to the promulgation of the guidelines the plaintiffs had filed a plan for school desegregation for the 1965–66 school year; *the plan had been approved by the Commissioner,* and federal financial assistance had been granted. When the 1966 guidelines were issued the Commissioner requested that the plaintiffs file a document assuring compliance, and requested that the defendants submit to the Commissioner detailed "enrollment statistics," [3] and "staffing patterns" for the 1965–66 school year, and projections for the 1966–67 school year. The assurance of compliance was signed and returned with the promise to furnish the requested information. The information was duly forwarded. In April 1966 the plan was implemented: the choice of school forms were distributed with an accompanying letter and an information sheet. Every pupil in the district exercised free choice by himself or by his parent, and in every instance the choice was approved. Out of a total enrollment of 6,092 pupils, ten Negro students chose to attend schools in which white pupils were enrolled. Continuing to summarize, it is alleged that on September 1, 1966 Commissioner Howe informed the Board by letter that effective steps had not been taken to implement or to satisfy the requirements of Title VI. The letter further informed the Board that there were deficiencies in the staffing patterns. Teachers have been hired for a period of years for schools within a particular district. The hiring was done, allegedly, without regard for race, creed, or color. Before each school year the teachers selected the school at which they wished to teach. No teacher's choice of school has been denied on the basis of race. The letter from the Commissioner further advised the Board that all action on applications for federal financial aid then pending or in the future would be "deferred."

ed to effectuate the provisions of section 2000d of this title with respect to such program or activity by issuing rules, regulations, or orders of general applicability which shall be consistent with achievement of the objectives of the statute authorizing the financial assistance in connection with which the action is taken. No such rule, regulation, or order shall become effective unless and until approved by the President. Compliance with any requirement adopted pursuant to this section may be effected (1) by the termination of or refusal to grant or to continue assistance under such program or activity to any recipient as to whom there has been an express finding on the record, after opportunity for hearing, of a failure to comply with such requirement, but such termination or refusal shall be limited to the particular political entity, or part thereof, or other recipient as to whom such a finding has been made and, shall be limited in its effect to the particular program, or part thereof, in which such noncompliance has been so found, or (2) by any other means authorized by law: *Provided, however,* That no such action shall be taken until the department or agency concerned has advised the appropriate person or persons of the failure to comply with the requirement and has determined that compliance cannot be secured by voluntary means. In the case of any action terminating, or refusing to grant or continue, assistance because of failure to comply with a requirement imposed pursuant to this section, the head of the Federal department or agency shall file with the committees of the House and Senate having legislative jurisdiction over the program or activity involved a full written report of the circumstances and the grounds for such action. No such action shall become effective until thirty days have elapsed after the filing of such report. Pub.L. 88–352, Title VI, § 602, July 2, 1964, 78 Stat. 252.

2. The Office of the Commissioner falls within the organizational structure of the United States Department of Health, Education and Welfare.

3. Obviously, the phraseology is used euphemistically to guard an inquiry as to the ratio of pupil assignment for a comparison with the percentage formulae which the Department seems to hold in such veneration.

Action on applications was deferred at that time, and this step was taken without any opportunity for a hearing or an express finding of record despite the requirements of section 602 of the Act.[4] No opportunity was given to the plaintiffs to examine witnesses, documents, or any other evidence. The foregoing is substantially the plaintiffs' allegations.

The chronology of the action is significant. After the Commissioner had exercised this disputed authority in September 1966, the School District waited for thirty days before bringing action. At that time no legislation was in effect to protect the District against unwarranted, or arbitrary, deferral, which could be extended, delayed, or confused at the will of the Commissioner. With commendable zeal the Board acted, and on October 7,[5] brought suit. Another thirty days expired—with no hearing. Fortunately for these plaintiffs, as well as the country as a whole, Congress enacted the Fountain Amendment as part of H.R. 13161[6] which was enacted into law November 5, 1966.

The plaintiffs further allege that they have been threatened with the suspension and termination of all federal funds for alleged non-compliance with the guidelines, and they allege on information and belief that the defendants intend to accomplish this. The particular acts which are alleged to be arbitrary, capricious, unreasonable, and unlawful are in substance as follows:

1. That the defendants have acted to require plaintiffs to achieve a racial balance or quota contrary to the terms of the Civil Rights Act of 1964.

2. That the defendants have required the plaintiffs to take certain employment actions in violation of the specific terms of the Act.

3. That the defendants have deferred action on pending or future applications for federal funds without any previous hearing or express findings as required by the Act.

4. That the defendants have ignored the terms of the Act which require that their actions must be consistent with the objectives of the statute authorizing the financial assistance.

5. That the defendants have taken action and threatened actions which result in a general or non-selective deferment of termination of federal financial assistance to all of plaintiff's educational programs without finding or determining that there has been discrimination in each program, in violation of the terms of the Act.

On these allegations the plaintiffs pray, inter alia, for (1) A temporary injunction and restraining order to enjoin the defendants from continuing to defer action on the applications during the pendency of this action;

(2) For a declaration of the rights of the parties, their legal relationships, and the resolution of the controversies existing between them and a declaration as to the legality of the demands made by defendants on plaintiffs;

(3) For a permanent injunction against the defendants enforcing the regulations set forth and the guidelines and from discontinuing the payment of federal funds.

(4) For a declaration that the guidelines are unlawful, arbitrary, capricious and unreasonable in the manner of their application to plaintiff in the above particulars.

■■ The court is not persuaded by the argument of the defendants that the suit should be dismissed on the doctrine

---

4. See Note 1, supra.

5. Under Rule 12(a) Fed.R.Civ.P. "The United States or an officer or agency thereof shall serve an answer * * * within 60 days * * *." It is obvious that half the fiscal school year, or more, would have expired before the case could have been tried and disposed of even without appeal. The money, meanwhile, was withheld.

6. A bill to strengthen and improve programs of assistance for elementary schools.

of sovereign immunity. The complaint has been carefully drawn to state with no misunderstanding that the acts of the defendants were beyond their powers, that certain acts of the defendants were in direct conflict with the mandate of the Civil Rights Act of 1964. In such cases —where the action is to prevent the defendant officials from committing individual unlawful acts—the action is not against the sovereign and the doctrine of sovereign immunity does not apply. Philadelphia Co. v. Stimson, 223 U.S. 605, 32 S.Ct. 340, 56 L.Ed. 570 (1912). See also Stark v. Wickard, 321 U.S. 288, 64 S.Ct. 559, 88 L.Ed. 733 (1944); Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). But defendants argue the complaint seeks an order directing them to pay over property of the government, in the form of funds, thereby bringing the action under those authorities which hold that such suits seeking official action are suits against the sovereign and are barred by the doctrine of sovereign immunity. Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949); Land v. Dollar, 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); State of Louisiana v. McAdoo, 234 U.S. 627, 629, 34 S.Ct. 938, 58 L.Ed. 1506 (1914). The court does not view the prayer for relief here as falling within those authorities. In this instance the point under contention is item four of the request for relief in the complaint. That item requests the enjoining of the defendants "from discontinuing the payment to plaintiffs of the federal financial assistance to which they are or may be in the future entitled under the laws of the United States." Rather than demanding positive official action on the part of the defendants, this complaint only requests that the defendants be ordered to cease an allegedly unlawful interference with the flow of funds to which the plaintiffs are already otherwise legally entitled.

In *Larson*, a leading case on the subject, the Court expressly stated that:

[W]here the officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions. The officer is not doing the business which the sovereign has empowered him to do or he is doing it in a way which the sovereign has forbidden. His actions are *ultra vires* his authority and therefore may be made the object of specific relief. 337 U.S. at 689, 69 S.Ct. at 1461.

In *Larson* the action was one in which an injunction was sought against lawful and official acts by the defendants and the doctrine was invoked. In State of Louisiana v. McAdoo, supra, the doctrine was invoked where the plaintiffs sought to enjoin acts which were within the discretionary powers of the defendants. In the present case the complaint was drawn so as to present a case which would fall within the recognized exception, that being that the acts alleged are unlawful and in direct conflict with the powers granted the officers. This principle was recognized recently by the district court in Abbott Laboratories v. Celebrezze, 228 F.Supp. 855 (D.Del. 1964). The point was not attacked on appeal and the case was reversed on the basis of a finding no controversy existed. 352 F.2d 286 (3rd Cir. 1965). Likewise the Second Circuit passed the point by a footnote, saying that it is clearly established that an action for a declaration that the federal regulatory officers have acted in excess of their authority does not constitute an unconsented suit against the United States. Toilet Goods v. Gardner, 360 F.2d 677, 682 n. 6 (2nd Cir. 1966). See also Wohl Shoe Co. v. Wirtz, 246 F.Supp. 821 (E.D.Mo.1965) (sovereign immunity is inapplicable where officer acts in excess of his authority).

At the hearing on the motion the defendants maintained that the doctrine of sovereign immunity was raised only to bring into focus what they perceived to be the proper jurisdictional basis of the action. This, they contend, would

be a judicial intervention for review of administrative action. On that basis they would maintain that the review is untimely for the administrative remedies have not been exhausted. By any jurisdictional basis the court is not persuaded to grant a motion to dismiss at this stage of the proceedings: the equities here would not permit it; no rule of law would command it. It must be noted at the outset that at the time the plaintiff school board initiated suit there was in effect—in reality—no administrative remedy available. The federal funds upon which they planned and budgeted their educational programs was at that time thought to be seriously threatened with termination. No subsequent developments have changed the situation significantly enough to warrant a summary dismissal.

 In the usual case where the doctrine of the exhaustion of administrative remedies applies the plaintiff suffers an adverse agency determination and he is then required to proceed with the available administrative remedies until a final administrative decision is reached before seeking review in the courts. Here, in that situation section 603 of the Civil Rights Act, 42 U.S.C.A. section 2000d–2, would provides the means for judicial review, however, *this claim does not in any way seek a review of an agency determination.* No factual determination has been contested. From the record, none has in fact been made. This complaint is directed to the legality of the policy statements issued by the defendants and each point of these policy statements under consideration is alleged to violate a specific provision of the Civil Rights Act. It is the avowed purpose of these regulations and statements to effectuate that Act. On this distinction the case seems to fall within the authority of Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958), where the Court stated that:

The sole and narrow question presented is whether a Federal District Court has jurisdiction of an original suit to vacate that determination of the Board because made in excess of its powers. * * * We think the answer surely must be yes. This suit is not one to 'review,' in the sense of that term as used in the Act, a decision of the Board made within its jurisdiction. Rather it is one to strike down an order of the Board made in excess of its delegated powers and contrary to a specific prohibition in the Act. * * * Surely, in these circumstances, a Federal District Court has jurisdiction of an original suit to prevent deprivation of a right so given.

Even the most narrow view of Leedom v. Kyne would still encompass the present controversy. In McCulloch v. Sociedad Nacional de Marineros de Honduras, 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed. 2d 547 (1963), the Court stated that in *Leedom* "judicial intervention was permitted since the Board's order was 'in excess of its delegated powers and contrary to a specific prohibition in the Act.'" 372 U.S. at 16, 83 S.Ct. at 675. *McCulloch* was said to fall within the exception of *Leedom* without violating a specific prohibition of the Act because of a uniquely compelling question of public importance. Allowing for that, the Court expressly stated that the narrow exception of *Leedom* was not extended. 372 U.S. at 17, 83 S.Ct. at 671. In the present case no extension is necessary to bring the action under *Leedom* for there is both a challenge that actions are in excess of delegated powers and contrary to a specific prohibition in the Act. The case of Leedom v. Kyne, no matter how restrictive or liberal a view is taken, is nevertheless an affirmation of the viability of an established principle of law. Where legal questions are presented which are of the type traditionally determined by courts and there is no question involving underlying administrative expertise no exhaustion of administrative remedy is required. In Public Utilities Comm. v. United Fuel Gas Co., 317 U.S. 456, 63 S.Ct. 369, 87 L.Ed. 396 (1943), the Court denied the applicability of the

doctrine, in a case attacking a state commission's orders as invalid, saying:

> No inquiry beyond the orders themselves and the undisputed facts which underlie them is necessary in order to discover that they are in conflict with the federal Act. At 469, 63 S.Ct. at 376.

In Skinner & Eddy Corp. v. United States, 249 U.S. 557, 39 S.Ct. 375, 63 L.Ed. 772 (1919), the Court held against a contention that the doctrine controlled; Mr. Justice Brandeis spoke for the Court in terms very much appropriate to the case at hand.

> If plaintiff had sought relief against a rate or practice alleged to be unjust because unreasonably high or discriminatory, the remedy must have been sought primarily by proceedings before the commission * * * ; and the finding thereon would have been conclusive, unless there was lack of substantial evidence, some irregularity in the proceedings, or some error in the application of rules of law * * *. But plaintiff does not contend that * * * [there is] an unreasonably high rate, or that it is discriminatory, or that there was mere error in the action of the commission. The contention is that the commission has exceeded its statutory powers; and that, hence, the order is void. In such a case the courts have jurisdiction of suits to enjoin the enforcement of an order, even if the plaintiff has not attempted to secure redress in a proceeding before the commission. At 562, 39 S.Ct. at 377.

See also the opinion of Mr. Justice Holmes in Waite v. Macy, 246 U.S. 606, 38 S.Ct. 395, 62 L.Ed. 892 (1918), where the doctrine was not applied in reviewing the legality of an administrative regulation.

The defendants arguments appear to the court to depend for their validity upon the theoretical assumption that no final action has been taken. The practical effects upon the school board is the same whether the action is spoken of as a deferral or a termination or no action at all.[7] The flow of funds has been interrupted or threatened and a legal controversy has come into existence. The court is of the opinion therefore that there is no basis upon which the action can be summarily dismissed because as the plaintiffs have cast their case the court has jurisdiction over the parties and the subject matter.

The authority of the Commissioner to defer action without a hearing has come under contention under the defendants' Rule 12(b) (6) motion. They have asserted that no claim has been stated for which relief can be granted as to the matter of deferral because deferral is within the lawful discretion of the Commissioner. The precise point of its legality is challenged by the complaint and there are most serious questions raised regarding such discretionary authority by the legislative history of the Act and of the Fountain Amendment.[8]

---

7. Mr. Fountain, in offering the amendment, quite succinctly exposed the emptiness and futility of the attempt to maintain verbal distinctions in the situation as it existed at that time: "Commissioner Howe piously contends that he is not actually 'refusing to grant' funds for new programs to the school districts involved, since that would admittedly violate section 602. Instead, he says, he is merely 'deferring' action indefinitely on applications for funds submitted by these districts. From the standpoint of the schools and the students affected, of course, an indefinite 'deferral' of action on an application for funds has exactly the same effect as a refusal." 103 Cong.Rec. 24562 (daily ed. Oct. 6, 1966).

8. The following sample of legislative commentary shows that the asserted discretionary authority to defer is certainly not an unassailable proposition.

Mr. Fountain, speaking before the House, when the Amendment was offered said: As I recall, when this act passed there were many members of this body who opposed the enactment of Title VI because they were sincerely and deeply concerned that administrative officials might misuse it to arbitrarily and unjustifiably deny Federal funds to local governmental units which were not engaged in discriminatory practices * * *.

Congress specifically provided, in section 602 of Title VI, that Federal funds are not to be refused to any local school

The defendants' motion would thus seem to precipitate a summary decision as to the legality of the deferrals at a far less propitious moment than when the record will have become complete. The matter of deferral cannot readily be isolated and treated apart from the entire controversy. It may not be possible at all. Deferral is the ultimate act of the sequence of events alleged that brings the parties into controversy. However such a conclusion is contradictory to their expressed desire that the matter proceed to administrative finality. The enigma and much of the confusion in debate has apparently come about because the parties have not been able to view the nature of the case in the same manner.

The context of the case, as apparently viewed by the defendants, is that no final action has been taken, that the guidelines are interpretative regulations that have not been applied to a specific fact situation, and that, therefore, the matter is not yet reviewable. The other view is, that the original, unlimited, arbitrary deferral was hopelessly final and that court action had become necessary. The Fountain Amendment now provides that a hearing may be had at a determinable time. While no basis for a dismissal of this action has been shown, the Fountain Amendment would now allow administrative actions to proceed to finality. This would cure the defendants' objections to the present proceedings and would allow the court to have the benefit of the completed record. Therefore, in order that no decision on the merits will be reached on an incomplete record, the motion to dismiss is denied; the jurisdiction of the court is retained; the parties are directed to proceed among themselves to a final administrative action, at which time the parties are to reappear before this court, perfect the record and proceed to further disposition of the case.

And it is so ordered.

district unless and until there has been "an express finding on the record, after opportunity" for a hearing, of a failure to comply" with the requirement of Title VI. To the best of my knowledge not a single one of the 70 or more districts which are presently being denied funds for new programs has been found, through the procedures required by section 602, to be engaging in discriminatory practices. Moreover, so far as I am aware, none of these districts has even been given an opportunity to defend itself at a hearing, as required by section 602. 103 Cong.Rec. 24562 (daily ed. Oct. 20, 1966).

\* \* \* \* \*

Mr. Pucinski: "There is nothing in the school act that gives them that right \* \* \* And there is nothing in the Civil Rights Act that provides such arbitrary powers, but the Office of Education still held up the funds." 103 Cong.Rec. 24564 (daily ed. October 6, 1966).

Mr. Perkins: "[The objective of the Fountain Amendment is to preclude the abuse of the power to defer action on applications to such an extent that it would amount to a denial of assistance without appropriate provision for a hearing." 103 Cong.Rec. 27059 (daily ed. October 20, 1966).

\* \* \* \* \*

Mr. Quie: This new language does not take from or add to Title VI of the Civil Rights Act?

Mr. Perkins: In no wise does it modify Title VI of the Civil Rights Act.

Mr. Quie: So since it is not yet determined whether the Commissioner has the legal right to defer or not, this does not give him the right or take away that right. Is that correct?

Mr. Perkins: That is correct.

Mr. Quie: It will have to be up to the court?

Mr. Perkins: To make that finding.

Mr. Quie: As to whether they did or not?

Mr. Perkins: Yes. 103 Cong.Rec. 27061 (daily ed. October 20, 1966).

\* \* \* \* \*

Mr. Fountain: I do not believe the Commissioner of Education has legal authority to withhold funds through deferral action. But that is a question for the courts to decide. If he does not already have deferral authority, the conference report will not give it to him. 103 Cong. Rec. 27063 (daily ed. October 20, 1966).