**FORT SUMTER TOURS, INC., Plaintiff,**

v.

**Cecil D. ANDRUS, Secretary, the Department of the Interior, United States, an agency of the United States of America, and Gray Line Water Tours, Incorporated, Defendants.**

Civ. A. No. 77–1670.

United States District Court,
D. South Carolina,
Charleston Division.

Sept. 30, 1977.

Robert B. Wallace, Morris D. Rosen, Charleston, S. C., for plaintiff.

A. Elliott Barrow, Asst. U. S. Atty., Coming Ball Gibbs, Jr., John M. Bleecker, Jr., Charleston, S. C., for defendants.

## ORDER

BLATT, District Judge.

The Plaintiff commenced this action on or about August 24, 1977, by the filing and service of a verified Complaint upon the Defendant, Cecil D. Andrus, Secretary of the Department of the Interior, United States, hereinafter designated the Secretary. The Court subsequently issued its Temporary Restraining Order dated August 26, 1977, subsequently extended by further Orders of the Court until September 21, 1977. After the commencement of the action, Gray Line Water Tours, Incorporated, hereinafter designated Gray Line, moved to intervene in the action as a party defendant.

The motions of Plaintiff for a preliminary injunction and of Gray Line for an Order allowing it to intervene came on for hearing before the Court on September 21, 1977. All parties were represented by counsel.

The Court finds that Gray Line has a possible interest in the controversy, and should be allowed to intervene as a party defendant. It is therefore

ORDERED that Gray Line be, and it is hereby allowed to intervene as a party defendant in the above action, and it shall responsively plead to the Complaint within twenty (20) days from the date of this Order.

With respect to Plaintiff's motion for a preliminary injunction, the Court having

fully considered the verified Complaint herein, Plaintiff's Memoranda of Law and Fact and the exhibit attached thereto, the Memoranda, exhibits and proposed Answer of the intervening Defendant Gray Line, and the Defendant Secretary, attached to their respective memoranda, and having also considered arguments of all counsel during the said hearing and admitted matters as shown in the record;

NOW, THEREFORE, the Court, for good cause shown, makes the following findings of fact and conclusions of law, and enters this Order, based on the record before the Court, including the agreements of counsel as will appear in the transcript of the proceeding.

## FINDINGS OF FACT

1. The Plaintiff is a South Carolina corporation, presently providing public boat transportation to Fort Sumter National Monument under a written concessions contract with the National Park Service, which contract commenced on January 1, 1968 and by its terms will expire on December 31, 1977.

2. The Plaintiff has performed its obligations under said contract to the satisfaction of the Secretary of the Department of the Interior, and has been found to be a "satisfactory concessioner", under the provisions of Title 16 U.S.C., paras. 20a–20g.

3. As a "satisfactory concessioner", the Plaintiff is entitled to a preference in the negotiations for and the renewal of its contract. (16 U.S.C. § 20d.)

4. The Plaintiff and the Defendant Secretary entered into negotiations for the renewal of the concession contract which resulted in a proposal as contained in a "Fact Sheet". (Defendant Secretary, Exhibit B)

5. Pursuant to the regulations of the National Park Service, a notice of the intention of the Secretary of the Interior to negotiate a concessions contract with the Plaintiff was published in the Federal Register on December 9, 1976. (Defendant Secretary, Exhibit A)

6. In response to the notice published in the Federal Register, a timely proposal from the Defendant Gray Line was received by the Defendant Secretary for the said concessions contract.

7. By Memorandum dated January 27, 1977, the Defendant Secretary established the criteria and guide lines to be used in the evaluation of the proposals submitted by the Plaintiff and the Defendant Gray Line as follows:

"1. In making your evaluation of the offer submitted by Gray Line, you must be assured that it is economically sound in all respects from a financial viewpoint and is a viable one. No benefits should accrue to its proposed operation as a result of their operations elsewhere. The proposed operation must be able to stand on its own.

2. Both offers must be evaluated based on the terms and conditions stated in the fact sheet. In the event the offer submitted by Gray Line is determined to be the best offer after considering all aspects of the proposal in total, the existing concessioner shall be afforded the opportunity to meet any aspect of it which may be considered desirable by the Service. If the current concessioner does not wish to do so, then negotiations shall be undertaken with Gray Line for the concession contract.

3. This new procedure should not be construed as a competitive bidding contest. Your final determination must be based solely on the information submitted and in accordance with provisions of Public Law 89–249." (Plaintiff, Exhibit 1)

8. An essential requirement of this concession operation is that the concessioner provide a dock site from which persons can be transported by water to Fort Sumter National Monument.

9. The proposal of the Defendant Gray Line contained no evidence of Gray Line's ability to provide a dock site for the docking of boats and the taking on of passengers for their visit to Fort Sumter National Monument, but stated: "The Gray Line will provide transportation from any site in the

city deemed appropriate by the Secretary." (Defendant Gray Line, Exhibit 2, page 3)

10. It is apparent that the Defendant Secretary does not now have under his control a suitable dock site in the Charleston area from which passengers can be transported to Fort Sumter National Monument.

11. The plaintiff has under its control a suitable dock site for the transportation of passengers to Fort Sumter National Monument. (Defendant Secretary, Exhibit B)

12. The record before the court is void of any finding by the Defendant Secretary that the proposal of the Defendant Gray Line was "determined to be the best offering considering all aspects of the proposal in total."

13. The Defendant Secretary evaluated the proposal of the Plaintiff and the proposal of the Defendant Gray Line, and concluded that the proposal submitted by the Plaintiff was "clearly the superior offer and acceptable in all aspects to the National Park Service." (Defendant Secretary, Exhibit C)

14. Thereafter, on or about May 19, 1977, a report of "Office of Audit and Investigation" of the Defendant Secretary was made in which the evaluation by the National Park Service of the proposals of the Plaintiff and of the Defendant Gray Line was criticized, and which made certain recommendations pertaining thereto. (Defendant Secretary, Exhibit D)

15. The Defendant Secretary, on or about August 12, 1977, notified Plaintiff that unless the Plaintiff, "in addition to your earlier proposal" agreed by August 26, 1977, to those portions of the proposals made on behalf of Gray Line "which are considered to be superior to those made on behalf of Fort Sumter Tours, Inc.", the Plaintiff would automatically waive its preferential right for a new concession contract. (Defendant Secretary, Exhibit E)

16. On or about August 16, 1977, the Plaintiff attempted to accept the proposal set forth in the letter dated August 12, 1977, (Exhibit E, above) reserving all rights alleged in its Complaint. (Defendant Secretary, Exhibit F)

17. On or about September 8, 1977, the Defendant Secretary acknowledged receipt of the Plaintiff's letter attempting to accept the proposal dated August 12, 1977, but the Defendant Secretary advised the Plaintiff that he considered the letter from the Plaintiff to be a "rejection of the opportunity to negotiate the new concession contract" and advised the Plaintiff as follows: "We therefore intend to negotiate a new concession contract with Gray Line Water Tours." (Defendant Secretary, Exhibit G)

18. The Defendant Secretary, in its Audit Report of May 19, 1977 (Defendant Secretary, Exhibit D) found that the failure of the Defendant Gray Line to include in its proposal (Defendant Gray Line, Exhibit 1) provisions for a dock site should have been clarified with Gray Line before its proposal was evaluated and rejected; but, without further clarification of Gray Line's proposal, the Defendant Secretary thereafter submitted to the Plaintiff on August 12, 1977, an Option which contained the best items of Gray Line's proposal together with the superior items of Plaintiff's proposal, which Option Plaintiff was required to accept or its statutory preference would be lost. (Defendant Secretary, Exhibit B)

19. The Option submitted to the plaintiff on August 12, 1977, by the Defendant Secretary contained portions from the proposal by the Defendant Gray Line, which proposal was not a valid or viable one according to the established criteria of the Defendant Secretary (Plaintiff, Exhibit 1) in view of the Defendant Secretary's own findings regarding the dock site. (Defendant Secretary, Exhibit D)

20. There is no evidence in the record before the Court that the proposal submitted to the Plaintiff on August 12, 1977, which it had to accept by August 26, 1977, or lose its statutory preference, was capable of being performed by Defendant Gray Line because no dock site for this Defendant had been acquired.

21. The action of the Defendant Secretary, under the circumstances, and in

view of the information he possessed as reflected in the entire record before the Court, appears at this stage of the proceedings to have been unreasonable, arbitrary and capricious, and deprived Plaintiff of its statutory preference rights, as there is no showing in the record that the Defendant Secretary had any proposal from Defendant Gray Line which included all of the requirements demanded of Plaintiff.

22. The Plaintiff, a satisfactory concessioner with a statutory preference, was required to accept a proposal extracted in part from an apparently invalid or non-viable offer from Defendant Gray Line and, therefore, the ruling of the Defendant Secretary that Plaintiff's rejection of such a proposal resulted in a loss of the statutory preference was, on the basis of the present record, unreasonable, capricious and arbitrary, and contrary to 16 U.S.C. § 20d.

23. The execution of a contract between the Defendant Secretary and Defendant Gray Line would cause Plaintiff to sustain irreparable injury and damage since it would have been denied preference granted to it by Congress, and such issue on the merits would become moot if such a contract were entered into.

24. The new concession contract does not commence until January 1, 1978. The parties were in agreement that the months of January and February are very "slow" months for this concession. No harm will result to the Defendants or the public if a preliminary injunction is granted. While the matter can probably be resolved by January 1, 1978, the Plaintiff is willing to and can be required to continue its operations until resolution.

25. There is a strong likelihood that Plaintiff will prevail on the merits, that is, that the facts will reflect at the trial that it was not granted a statutory preference as decreed by Congress, and not granted the right of first refusal to a proposal which another was prepared to accept and capable of performing.

## CONCLUSIONS OF LAW

■ 1. Jurisdiction of this action is properly laid under 28 U.S.C. § 1331(a).[1] The cause of action asserted arises under 5 U.S.C. § 701, et seq., of the Administrative Procedure Act. The Defendant, Gray Line, however argues that there has been no such final agency action, as required by 5 U.S.C. § 704, which would afford judicial review.

■ This court, in making a determination as to whether a matter is ripe for review, must do so by a realistic appraisal of the nature and consequences of the action of the administrative body. If the action of the agency is such that it denies a right of a party which, as a practical matter, is unrecoverable through further administrative action, then exhaustion of administrative remedies is not required, and a Court should not hesitate to review the agency action. Greene v. United States, 376 U.S. 149, 163, 84 S.Ct. 615, 11 L.Ed.2d 576 (1963). The Courts are in substantial agreement that in a given case it is not the label affixed to the action of the agency, but rather a realistic appraisal of the consequences of the action which must govern. The ultimate test of reviewability is not to be found in an over-refined technique, but in the need for review to protect from irreparable injury threatened in the exceptional case by administrative rulings which

1. Although the complaint alleges jurisdiction under 5 U.S.C. § 701–706, and jurisdiction thereunder has arguably been approved *sub silentio* by the United States Supreme Court prior to the 1976 Amendment to 28 U.S.C. § 1331(a) in cases such as *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), the recent pronouncement by that Court in *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), makes it clear that the Administrative Procedure Act is not an independent source of subject matter jurisdiction to review agency action. *Lowther v. Montgomery County*, 561 F.2d 1120 (4 Cir. 1977). Since this Court properly has jurisdiction under 28 U.S.C. § 1331(a), such jurisdiction is not defeated by failure to designate such statute in the complaint, for "(I)t is well settled that the recitation of a statute can neither deprive a court of jurisdiction nor confer jurisdiction upon it." *Blue v. Craig*, 505 F.2d 830, 844 (4 Cir. 1974); *See also*, 5 Wright and Miller, § 1209 n. 13 (Supp.1977).

attach legal consequences to action taken in advance of other hearings and adjudications that may follow. A final Order for purposes of review need not necessarily be the very last Order. *Isbrandtsen Co. v. United States*, 93 U.S.App.D.C. 293, 211 F.2d 51, *cert. denied*, 347 U.S. 990, 74 S.Ct. 852, 98 L.Ed. 1124 (1953); *Lam Man Chi v. Bouchard*, 314 F.2d 664 (3 Cir. 1963); *Cities Service Gas Company v. Federal Power Commission*, 255 F.2d 860 (10 Cir.), *cert. denied* 358 U.S. 837, 79 S.Ct. 61, 3 L.Ed.2d 73 (1958).

 In the present case, there are ample reasons why this Court should not stay its hand until further action by the agency. First, the question here involved is a narrow principle of law, *i. e.*, whether under 16 U.S.C. § 20d, the Secretary accorded the Plaintiff its statutory preference. The Constitution reposes in the Courts, not the administrative agencies, responsibility for determining legal questions. The expertise of the agency concerning the operation of our national parks is not required for such a determination. This finding is supported by the decision in *McKart v. United States*, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1968), where the Court rejected the proposition that a lower Court would have to allow the Selective Service to first give its view of the interpretation of the "Sole Surviving Son" exemption:

"The resolution of that issue does not require any particular expertise on the part of the appeal board; the proper interpretation is certainly not a matter of discretion." at 198, 89 S.Ct. at 1665.

*See also, United States ex rel Brooks v. Clifford*, 412 F.2d 1137, 1139 (4 Cir. 1969); *Lee County School Dist. No. 1 v. Gardner*, 263 F.Supp. 26 (D.S.C.1967). In the present case, the situation is the same. The Secretary has determined that the "preference" required by 16 U.S.C. § 20d entitles the present concessioner to meet any *viable* competing offer.[2] If a competing offer is not viable, there is no discretion in the

agency to require the present concessioner to meet it. Clearly an offer to operate a boat service cannot be viable without a dock. Thus, the strictly legal issue is whether the agency action requiring plaintiff to meet an *unviable* offer violated 16 U.S.C. § 20d.

The second factor which this court feels requires that it act now, without awaiting further administrative action, is the futility of such a course. The decisions are legion that hold that further exhaustion is not mandated when such a course would be of no avail. *See, e. g., N.L.R.B. v. Industrial Union of Marine and Shipbuilding Workers of America, AFL–CIO, Local 22*, 391 U.S. 418, 88 S.Ct. 1717, 20 L.Ed.2d 706 (1968); *Marsh v. County School Board of Roanoke County, Va.*, 305 F.2d 94 (4 Cir. 1962); *Quarles v. Philip Morris*, 271 F.Supp. 842 (E.D.Va.1967). In the present case, the decision which deprived Plaintiff of its preference emanated from the upper levels of the Department of the Interior in its Office of Audit and Investigation. As a result of that Office's recommendation, the regional director for the Parks Service reversed himself,[3] and required Fort Sumter, which contends that it had a contract on March 1, 1977, to meet the offer of Gray Line, which offer the regional director had previously rejected as inferior. It is extremely unlikely, given the turn of events which took place among the higher echelons of the Interior Department, that the reviewing authorities in the Park Service or the Interior Department would reverse themselves again and reinstate the original decision of the regional director, which decision they were instrumental in invalidating. In any event, there is no indication from the Secretary as to what the Plaintiff could do at this time to compel the Secretary to grant the preference it contends the law provides for a "satisfactory concessioner." As far as this Court can determine, there are no established administrative procedures to con-

2. See Plaintiff's Exhibit K.

3. Compare the regional director's letters of March 1, 1977, and August 12, 1977. (Plaintiff's Exhibits C and E).

test the loss of a preference.[4] In any case, the Court will not require such a futile act.

The third factor militating against further agency action is the irreparable injury likely to be suffered by the Plaintiff if further delay is experienced in the resolution of this matter. While the Plaintiff does not face a criminal prosecution as did the Plaintiff in *McKart v. United States, supra,* it does face the possible loss of a business which it has built and maintained for more than ten (10) years. While in many instances, money damages will compensate an aggrieved party for his loss, here the nature of the operation renders this impossible. Should the decision of the Secretary stand, and Plaintiff be forced to undergo protracted administrative procedures—(if, as noted above, such procedures exist at all)—prior to instituting suit to litigate its legal claim, Plaintiff may well be forced to sell its assets, including the two tour boats it owns. The value of these boats as part of a "going concern" without doubt far exceeds the amount which they would bring if sold *in vacuo.* It is even possible that a long delay would prevent Plaintiff from ever again becoming operational. This real and apparent danger of irreparable injury convinces this Court that it should act now. *Barnes v. Chatterton,* 515 F.2d 916 (3 Cir. 1975); *Ogletree v. McNamara,* 449 F.2d 93 (6 Cir. 1971); *United States ex rel. Brooks v. Clifford,* 412 F.2d 1137 (4 Cir. 1969).

■ Recognizing that the question of exhaustion of remedies is not jurisdictional, but one addressed to the sound discretion of the trial court, this Court feels that it would be amiss if it required further administrative action. *N.L.R.B. v. Industrial Union of Marine and Shipbuilding Workers of America, AFL–CIO, Local 22, supra,* n.8; *Hayes v. Secretary of Defense,* 169 U.S. App.D.C. 209, 515 F.2d 668 (1975). The

doctrine of exhaustion of remedies is a flexible doctrine and is not to be blindly applied in every case. *United States ex rel. Brooks v. Clifford,* 412 F.2d 1137, 1138 (4 Cir. 1969). For the reasons stated above, this Court finds that the decision of the Secretary concerning plaintiff's preference is in the proper posture for review at this time.

■ 2. Plaintiff is entitled to a Preliminary Injunction restraining and enjoining the Defendant, Cecil D. Andrus, Secretary, Department of the Interior, his agents, successors, servants and employees and all persons acting by, through and under him, from entering into any agreement with anyone to provide boat transportation for members of the public to Fort Sumter National Monument, Charleston, South Carolina.

In the opinion of this Court, the "balance of hardship" test for the issuance of a Preliminary Injunction is most properly applicable in the factual situation here presented. That test, approved in *Blackwelder Furn. Co., etc. v. Seilig Mfg. Co.,* 550 F.2d 189 (4 Cir. 1977), is amply met here. The Court is satisfied that injury to the Plaintiff will be certain and irreparable if the injunction is not granted and the final decree be in its favor, while, if the injunction is granted, the injury to the Defendants, even if they succeed, will be inconsiderable.

The Court in *Blackwelder* stated that where the administrative agency had considered the question of staying its Order, the standard to be used with respect to the issuance of a Preliminary Injunction should be the conventional four (4) requirements. The Secretary of the Interior has not passed upon the question of a stay, but assuming that *Blackwelder* is not applicable, the Court finds that the Plaintiff is entitled to a Preliminary Injunction under the conventional rules for the following reasons:

---

4. Although 43 CFR § 4.1, *et seq.,* contains regulations concerning contract appeals within the Interior Department, § 4.101 limits appeals to those taken "under contract provisions requiring the determination of such appeals by the head of the agency." No such provision in the Fort Sumter contract was brought to the atten-

tion of this Court. In any event, the language of the section indicates that a contractor under such a clause could initiate a court action instead of pursuing the agency remedy, "Any contractor *may* appeal to the Board of Contract Appeals. . . ."

(a) Plaintiff has made a strong showing that it is likely to prevail upon the merits, *i. e.*, that it is likely that it has been improperly denied its statutory preference.

(b) Plaintiff will suffer irreparable injury if the Preliminary Injunction is not granted in that the Secretary of the Interior has advised it that it will negotiate with another for a contract without necessarily ever negotiating further with the Plaintiff.

(c) The issuance of a Preliminary Injunction should cause no harm to the Defendants. Gray Line does not now have a contract. Even if the Court assumes it could obtain a contract, it would not become effective until 1978, and even then it is obvious that the first months of 1978 would not be profitable months.

(d) There is no potential harm to the public interest. The parties agreed that January and February are indeed "slow" months in this concession and this matter can be resolved prior to January 1, 1978, or certainly within the months immediately following. It is, therefore,

ORDERED, ADJUDGED, AND DECREED, that the Defendant, Cecil D. Andrus, Secretary, Department of the Interior, his agents, successors, servants and employees and all persons acting by, through or under him be, and they are hereby, restrained, until further Order of this Court, from entering into any agreement with anyone to provide boat transportation for members of the public to Fort Sumter National Monument, Charleston, South Carolina; and it is further

ORDERED, that a bond be filed by the Plaintiff herein within ten (10) days in the sum of Ten Thousand ($10,000.00) Dollars, conditioned for payment of such costs and damages as may be incurred or suffered by any party who was found to have been wrongfully restrained or enjoined. By agreement of the parties, this bond may be executed by Plaintiff alone without sureties.

AND IT IS SO ORDERED.