Varsted C. JIZMERJIAN, Plaintiff,

v.

DEPARTMENT OF the AIR FORCE, Defendant.

Civ. A. No. 77-2171.

United States District Court, D. South Carolina, Charleston Division.

Sept. 21, 1978.

Varsted C. Jizmerjian, pro se.

Thomas E. Lydon, Jr., U.S. Atty., Columbia, S.C., for defendant.

## ORDER

BLATT, District Judge.

Plaintiff commenced this action to require the defendant to pay to him certain amounts being withheld from his military retirement pay, claiming jurisdiction under 28 U.S.C. § 1332—(diversity of citizenship).[1] The defendant answered and filed a motion to dismiss on the grounds of lack of jurisdiction—(F.R.C.P. 12 (b)(1)—and failure to state a cause of action—(F.R.C.P. 12 (b)(6)).

A brief statement of the history of plaintiff's involvement with the State of Arizona courts, giving rise to the present action, is essential to an understanding of the issue

1. The pleadings of both parties perhaps adhere too closely to the F.R.C.P. 8 requirement of a short and concise statement of the facts involved; many of the details outlined above were uncovered at the hearing held in this matter on August 16, 1978.

here. Plaintiff, now a retired colonel in the United States Air Force, was married in Illinois in 1947 and was recalled into the Air Force in 1951, due to the Korean Conflict. Apparently, plaintiff remained in the service for several years and served this country in Vietnam during the conflict there. Returning from Vietnam in 1964, plaintiff asked to be assigned to an Air Force Base in Arizona where he lived with his wife until domestic difficulties impelled him to move out of a rented off-base house in the spring of 1967. Between 1967 and 1971, the plaintiff retired from the Air Force, and had apparently moved to Nevada by June 5, 1970, since on that date he was personally served in Las Vegas with a copy of a summons and complaint in a divorce action commenced by his wife in the Superior Court of the State of Arizona (County of Pima). It is this divorce action which forms the nucleus of the present controversy. Plaintiff apparently appeared either personally or by counsel in the Arizona divorce trial because the record reflects that he moved for a new trial at the conclusion of the proceedings.[2]

On appeal to the Arizona Court of Appeals, plaintiff asserted that no grounds for divorce had been proven, that the alimony award was too high, and that the trial court's division of property was erroneous. *Pointedly,* apparently plaintiff *did not* challenge the jurisdiction of the trial court to grant the divorce decree. On appeal, the Arizona Court upheld the divorce decree and alimony award of $300.00 per month but reversed the division of property award, finding that the matrimonial domicile was never established in Arizona; that the law of the state of matrimonial domicile at the time of acquisition of movables governed; and that under applicable law—(Illinois)— plaintiff's wife had no claim to plaintiff's checking accounts or insurance policies. Based on the decree, as modified on appeal, plaintiff's wife moved to enforce the judgment as to alimony against plaintiff; however, by the time the trial court decree was

affirmed, plaintiff was not in Arizona. Plaintiff's wife secured various writs of garnishment to the defendant Air Force on plaintiff's retirement pay and, on April 29, 1977, plaintiff was adjudged in contempt of the Arizona Superior Court decree which ordered that the arrearages on the alimony payments be reduced to judgment in the amount of $17,700.00 plus interest. Plaintiff began this action on November 3, 1977, with the filing of his summons and complaint challenging the withholding by the Air Force of a portion of his retirement pay.

The court notes as a preliminary matter that although plaintiff, acting *pro se* here, alleged jurisdiction based on diversity, which is improper in an action against the United States, 28 U.S.C. § 1331 is the proper jurisdictional basis and plaintiff's incorrect designation of his jurisdictional basis does not warrant a F.R.C.P. 12 (b)(1) dismissal. *See, Fort Sumter Tours v. Andrus,* 440 F.Supp. 914, 918 n. 1 (D.S.C. 1977) *aff'd.* 564 F.2d 1119, 1123 n. 4 (4th Cir. 1977); therefore, defendant's motion to dismiss on this ground is denied.

Defendant's second ground for dismissal, *i. e.,* a F.R.C.P. 12 (b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, presents more serious problems. The motion is based on 42 U.S.C. § 659 which provides in relevant part:

"(a) Notwithstanding any other provision of law, effective January 1, 1975, moneys (the entitlement to which is based upon remuneration for employment) due from, or payable by, the United States, or the District of Columbia (including any agency, subdivision, or instrumentality thereof) to any individual, including members of the armed services, shall be subject, in like manner and to the same extent as if the United States or the District of Columbia were a private person, to legal process brought for the enforcement, against such individual of his

---

2. This fact is taken from the appellate opinion of the Arizona Court of Appeals. There is no indication from the record that plaintiff appealed this intermediate appellate decree to the Arizona Supreme Court.

legal obligations to provide child support or make alimony payments.

*    *    *    *    *    *

(f) Neither the United States, any disbursing officer, nor governmental entity shall be liable with respect to any payment made from moneys due or payable from the United States to any individual pursuant to legal process regular on its face, if such payment is made in accordance with this section and the regulations issued to carry out this section."

As can be seen from the above quoted subsections, the United States has waived its sovereign immunity to a limited extent to provide for enforcement of state writs of garnishment against the United States as garnishee, when the garnishment arises out of a decree providing for child support or alimony payments. The defendant, relying on these sections, has filed with this court certified copies of the Arizona Court of Appeals opinion, writs of garnishment issued to the United States, and the Order of the Superior Court of Pima County, Arizona, holding plaintiff in contempt for failure to meet his court-imposed alimony duties,[3] and defendant has moved to have the action dismissed under the protective language of § 659 (f). It is clear that if the monies being withheld from plaintiff by the United States are the result of "legal process regular on its face" arising out of an alimony decree, the United States is entitled to a judgment in this court.

Plaintiff, in a *pro se* brief rivaling in competency and comprehensiveness memoranda filed in this court by many members of the licensed bar, has earnestly argued—(with abundant case authority)—that a judgment rendered by a state court, which court does not have jurisdiction of the subject matter or of the person, is without efficacy in other states, and such judgment is not entitled to full faith and credit under the Constitution.[4] With this principle, the court fully agrees; however, the facts of this case prevent application of that established doctrine here. The record which this court must accept at face value in this proceeding reflects that plaintiff was personally served in Nevada with a copy of the Arizona summons and complaint in the divorce action; that he appeared and contested that action—(since he moved for a new trial, which was denied); that he appealed the lower court Order to the Arizona Court of Appeals; and that he won a partial reversal.[5] Significantly, plaintiff apparently did not raise any jurisdictional question in any of the state proceedings, and the April, 1977, state contempt decree expressly states, "The court finds that it still has jurisdiction over the subject matter and the persons." This court cannot ignore these repeated indications that the Arizona state courts had (1) subject matter jurisdiction of the marriage—(by virtue of plaintiff's wife's Arizona domicile after separation)—to allow the divorce decree to be rendered, and (2) personal jurisdiction over plaintiff to render the alimony decree prop-

---

**3.** Since this court found it necessary to require the production of the above documents and others, it necessarily converted the defendant's F.R.C.P. 12 (b)(6) motion to a F.R.C.P. 56 motion for summary judgment, and gave the parties time to supplement the record as required by F.R.C.P. 12 (b).

**4.** It is well settled that United States District Courts are bound to give valid foreign state judgments the same faith and credit that the courts of one state are bound to give judgments of a sister state. *Cooper v. Newell,* 173 U.S. 555, 567, 19 S.Ct. 506, 43 L.Ed. 808 (1899).

**5.** Plaintiff cites *Lore v. Citizens Bank of Winslow,* 51 Ariz. 191, 75 P.2d 371 (1938), for the proposition that an appearance by a party after

judgment is rendered against him without service of process and personal jurisdiction will not cure a want of jurisdiction as to the judgment previously obtained. However, in that case, the party not served had merely stipulated to a continuance of supplemental proceedings until he could move to challenge jurisdiction and had not, as plaintiff apparently did here, involved himself so fully in the state trial and appellate processes. However, this court does not express any opinion on the issue of plaintiff's consent to jurisdiction beyond its opinion that jurisdiction appears "regular on the face" of the state decision.

er.[6] Notwithstanding the able and articulate citation of authority in plaintiff's brief in opposition to defendant's motion, this court is persuaded that 42 U.S.C. § 659 (f) insulates the United States from this suit. A recent federal appellate opinion, *Overman v. United States,* 563 F.2d 1287 (8th Cir. 1977), supports this court's conclusion. In *Overman,* the plaintiff, who alleged that a state divorce and support decree was fraudulently procured against him, sought to enjoin the Veterans Administration from disbursing a part of his salary pursuant to a writ of garnishment. The court rejected the challenge stating:

> "Moreover, we will not readily infer that Congress intended to permit federal agencies to be dragged in as defendants by any federal employee or spouse of an employee who, unhappy with a prior state adjudication, seeks to contest it by suing the government over wage garnishment rather than challenging the divorce decree in an appropriate state forum." At 1292–1293.

In this Circuit, our Court of Appeals is extremely solicitous of the rights of *pro se prisoner* litigants to the point that district courts are required to "advise" prisoners how to rectify deficiencies in their federal causes of action. (*See, Gordon v. Leeke,* 574 F.2d 1147 (4th Cir. 1978). Keeping this in mind, this court is certain that the appellate tribunal would not object to this court advising the nonprisoner *pro se* military veteran here involved that, in its opinion, his only possible successful method of attack on the Arizona alimony decree must take place in the Arizona state courts; however, from a reading of this record, such a course appears to be one that will require extraordinary "maneuvers" for a successful "campaign."

For the foregoing reasons, this court grants defendant's motion for summary judgment and the instant action is hereby dismissed.

AND IT IS SO ORDERED.

---

**6.** The basis for personal jurisdiction over plaintiff for the purpose of awarding alimony against him is not apparent from the Arizona Court of Appeals opinion. It is possible that the court assumed *sub silentio* that, by appearing in the trial—(or at least by moving for a new trial)—the plaintiff consented to jurisdiction. This is the general rule—(*See,* 27B CJS *Divorce* § 247). It is doubtful that an attempt to limit plaintiff's participation at trial to a "special appearance" could *on this record* prevail. *Cf., Nocher v. Nocher,* 268 S.C. 503, 234 S.E.2d 884 (1977)—[husband's attempt under an alleged special appearance to challenge the sufficiency of wife's pleadings in divorce action rendered him subject to state court general jurisdiction]. In any event, the record here does not reflect any attempted special appearance.

To the extent that the Arizona Court of Appeals indicated that personal jurisdiction existed over plaintiff on any other basis, its reasoning is curious to say the least. Since the court concluded that the parties never acquired a matrimonial domicile in Arizona and plaintiff never had a separate domicile there which would allow plaintiff's separate property to be divided in the Arizona divorce action under Arizona's community property law, it would seem to follow that alimony could not be awarded on the basis of plaintiff's domicile, since that domicile never existed in Arizona. However, the court did allow the alimony award to stand while striking the property division. The only consistent explanation for this is that the court found that plaintiff had consented by appearance to a personal judgment against him, but that under the law of Illinois, which was the parties' last *matrimonial* domicile—(although plaintiff's wife was then *separately* domiciled in Arizona)—ownership of the movables in question—(checking accounts and insurance policies)—were plaintiff's separate property. Thus, it was not because of a lack of jurisdiction that plaintiff secured a reversal on the movables question, but due to the choice of law rules of Arizona recognizing that Illinois law was applicable to the ownership of movables. In any event, the underlying basis for the Arizona Court's ruling is for Arizona, not this court, to explicate; on its face, the appellate court decree is valid.